392 So.2d 700 (1980)
Richard G. LUCITO, Plaintiff-Appellee,
v.
LOUISIANA HOSPITAL SERVICE, INC., d/b/a Blue Cross of Louisiana, Defendant-Appellant.
No. 7830.
Court of Appeal of Louisiana, Third Circuit.
December 17, 1980.
*701 Lewis & Lewis, Peter F. Caviness, Opelousas, for defendant-appellant.
Sandoz, Sandoz & Schiff, Gerald H. Schiff, Opelousas, for plaintiff-appellee.
Before CULPEPPER, DOMENGEAUX, and SWIFT, JJ.
DOMENGEAUX, Judge.
The plaintiff-appellee, Richard G. Lucito, instituted this suit to recover medical benefits under a group hospitalization insurance policy issued by the defendant-appellant, Louisiana Hospital Service, Inc., d/b/a Blue Cross of Louisiana. Blue Cross denied coverage. The trial court rendered a judgment in favor of the plaintiff and against Blue Cross for the benefits, plus attorney's fees, but denied penalties. From this judgment, Blue Cross suspensively appeals. Plaintiff has answered the appeal seeking penalties denied him in the trial court and asking for additional attorney's fees for services on appeal. We reverse in part and affirm in part.
The issues presented on appeal are: Is the plaintiff's hospitalization excluded from coverage under the hospitalization insurance policy issued by the defendant-appellant? And, if the plaintiff is entitled to benefits under the policy, is he entitled to penalties and attorney's fees?
On November 22, 1978, the plaintiff was examined by Dr. Wilfred Briley, a general practitioner. Doctor Briley concluded that the plaintiff was suffering from diarrhea but could not at that time ascertain the cause. The next day, Doctor Briley admitted the plaintiff to Opelousas General Hospital. During the approximately 24 hour period plaintiff was in the hospital he was enema cleansed, then was administered a Barium enema, a GI series, blood tests, gall bladder tests, an EKG, tests for parasites, etc., and a chest x-ray. Following these tests, Doctor Briley determined that plaintiff was suffering from a peptic ulcer. Plaintiff was released from the hospital and treatment of his ulcer continued at home.

IS PLAINTIFF'S HOSPITALIZATION COVERED?
Defendant contends that this hospitalization is not covered under its policy because of an exclusion contained in Article IX A (4) of the policy in question, which reads:
"... A. No Health Care allowance will be provided for:
* * * * * *
(4) admissions which in the opinion of the attending Physician and the Plan's Physicians are primarily for diagnostic studies ..." (Emphasis added)
That clause excludes from coverage any hospitalization which, in the opinion of the attending physician and the Blue Cross physicians, is primarily for diagnostic studies. The trial court determined that in order for *702 the exclusion to apply both the admitting physician and the Blue Cross physicians had to concur that the hospitalization was primarily for diagnostic studies. The court found that Doctor Briley, the attending physician, did not so concur. This determination is supported by the record. Doctor Briley testified that he admitted the plaintiff into the hospital because he suffered from diarrhea and that the diagnostic tests were part of the treatment. We cannot say this determination is manifestly erroneous. In fact, his definition of treatment as including diagnostic tests is supported by recent jurisprudence.
In Baque v. Pan-American Life Insurance Company, 313 So.2d 293 (La. App.3rd Cir. 1975), writ refused 318 So.2d 52 (La.1975), this Court had occasion to define the word "treatment":
"Although the Louisiana jurisprudence reveals no case defining `treatment', we find applicable the following definition of that term by the courts of sister states: `In common parlance and often in the law, `treatment' is the broad term covering all the steps taken to effect a cure of the injury or disease. It includes examination and diagnosis, as well as application of remedies', Hester v. Ford, 221 Ala. 592, 130 So. 203, 206 (1930). See also Stephens v. Williams, 226 Ala. 534, 147 So. 608 (1933); Kirschner v. Equitable Life Insurance Society, 157 Misc. 635, 284 N.Y.S. 506, 510 (1935); Permanent Edition, Words and Phrases, Volume 42A, Treatment, p. 45. We believe that the foregoing definition of the word `treatment' accords with logic and common sense."
Under this rather broad definition of the word "treatment" which this court has utilized, diagnostic tests may be properly regarded as part of the treatment.
The Baque definition of treatment was approvingly applied in a situation analogous to the one herein in our recent case of Poche v. Louisiana Health Services & Indemnity Company, 391 So.2d 17 (La.App.3rd Cir. 1980) (# 7827).
We note that the Blue Cross policy purports to provide inpatient benefits for "treatment" of an illness or infirmity[1] while at the same time, later in the policy, it purports to exclude inpatient benefits when the hospitalization is "primarily for diagnostic studies". We note that the Blue Cross policy does not define the terms "treatment" (which is covered) nor "diagnostic studies" (which is not covered if the hospitalization is primarily for that reason).
In the absence of more precise policy language which clearly differentiates between "treatment" and "diagnostic studies" we cannot say the trial court erred in giving great weight to Doctor Briley's testimony that the diagnostic tests constituted a part of the treatment.
It is well settled that ambiguous clauses in policies of insurance are to be construed against the insurer. This is particularly true of exclusionary clauses. In Paret v. Louisiana Health Service & Indemnity Company, 366 So.2d 634 (La.App.3rd Cir. 1979), writ refused, 369 So.2d 139 (La.1979) this Court said: "If more than one interpretation of an exclusion is reasonable, the one affording coverage to the insured will be adopted." See also Rushing v. American Income Insurance Company, 274 So.2d 458 (La.App.3rd Cir. 1973).
The defendant cites Niles v. American Banker's Insurance Company, 258 So.2d 705 (La.App.3rd Cir. 1972) to support its contention that the plaintiff's hospitalization is not covered in the instant case. The facts in Niles are similar to the facts herein. *703 However, in Niles, the attending physician testified that the hospitalization was for "observation and for tests"; no treatment was given. The trial and appellate courts concluded that Mrs. Niles was hospitalized principally for the purpose of diagnosis, even though a positive diagnosis was never made. Niles can be distinguished from the instant case because here Doctor Briley testified that the plaintiff's hospitalization was for treatment as well as for diagnostic tests and that the tests were part of the treatment. Thus, we find the Niles case inapposite.

PENALTIES AND ATTORNEY'S FEES
The trial court went on to determine that the plaintiff was entitled to attorney's fees, but not to the penalties provided in La.R.S. 22:657. We will not disturb the trial court's finding that penalties are not warranted; however we find the court erred in making the award of attorney's fees.
La.R.S. 22:657 governs the award of penalties and attorney's fees when insurers fail to make timely payment of loss claims under health and accident policies. The defendant contends that La.R.S. 22:658, which also governs the awarding of penalties and attorney's fees in certain cases, should control the instant situation because the Supreme Court in Tabb v. Louisiana Health Services & Indemnity Co., 361 So.2d 862 (La.1978) held that a Blue Cross policy which did not insure against injury, disablement or death, but provided benefits only for hospital and medical care was not a "Health and Accident" policy. However, the Supreme Court in Rudloff v. Louisiana Health Services and Indemnity Co., 385 So.2d 767 (La.1980) overruled Tabb in that it held such a Blue Cross policy is classified as a "Health and Accident" policy and is within the scope of La.R.S. 22:657. Thus, the trial court correctly held that La.R.S. 22:657 was the applicable statute.
La.R.S. 22:657 provides for penalties and attorney's fees to be assessed against an insurer who fails to pay a claim without "just and reasonable grounds, such as would put a reasonable and prudent businessman on his guard". As to whether or not just and reasonable grounds exist is purely a factual matter and each case must be considered on its own facts and circumstances. Tingle v. Reserve Life Insurance Company, 260 So.2d 333 (La.App.2nd Cir., 1972); McMillan v. Travelers Insurance Company, 371 So.2d 1213 (La.App.1st Cir. 1979). The trial judge in the instant case found the actions of the defendant not to warrant the imposition of penalties. Factual determinations of the trial court will not be disturbed unless clearly wrong. Upon review of the entire record we find the trial court's decision in this respect is not clearly wrong.
However, we feel that the trial court was clearly wrong in awarding attorney's fees to the plaintiff. The penalty clause of La.R.S. 22:657 reads:
"Failure to comply with the provisions of this Section shall subject the insurer to a penalty payable to the insured of double the amount of the health and accident benefits due under the terms of the policy or contract during the period of delay, together with attorney's fees to be determined by the court."
The words "together with attorney's fees" indicate attorney's fees may only be assessed when grounds exist to award penalties. See Miley v. Fireside Mut. Ins. Co., 200 So. 505 (La.App.1st Cir. 1941). Having determined no grounds existed to award the statutory penalty, it was clearly wrong for the trial court to award attorney's fees.
For the above and foregoing reasons, the judgment of the trial court is reversed insofar as it awards attorney's fees to the plaintiff-appellee. In all other respects the trial court's judgment is affirmed. All costs of this appeal are to be borne by the defendant-appellant.
AFFIRMED IN PART, REVERSED IN PART, AND RENDERED.
NOTES
[1] Article II of the policy, relative to inpatient hospital benefits provides:

"A Member admitted to a Member Hospital as an Inpatient is entitled to the following Health Care benefits for each Benefit Period when treatment of the condition requires Inpatient care and when services and supplies provided are prescribed by a Physician billed for by the Hospital, administered by the Hospital, and used by the Member during the Admission, and when the services and supplies rendered are in connection with direct care and treatment of an illness or infirmity necessitating hospitalization." (Emphasis added)