413 So.2d 331 (1982)
Baxter THOMPSON, Plaintiff & Appellee,
v.
BUSINESS INSURANCE LIFE OF AMERICA, Defendant & Appellant.
No. 8750.
Court of Appeal of Louisiana, Third Circuit.
April 14, 1982.
*333 Conner, Martinez & Miles, Joseph P. Williams, Jr., Metairie, for defendant & appellant.
Kennedy & Yeager, Ralph W. Kennedy, Alexandria, for plaintiff & appellee.
Before CULPEPPER, SWIFT and DOUCET, JJ.
CULPEPPER, Judge.
Baxter Thompson sued Business Insurance Life of America for benefits under a hospitalization insurance policy. The benefits sought are for certain doctor and hospital bills incurred as a result of the injury and illness of Thompson's infant daughter. During the pendency of the suit, plaintiff's father, M. C. Thompson, was appointed legal tutor of the minor child. The grandfather was subsequently substituted as proper party plaintiff in the instant suit. From a judgment in favor of plaintiff, defendant has appealed.
The issues are: (1) Did the application for insurance misrepresent that the child was in good health, where she had a cast on a broken arm at the time? (2) Is coverage excluded by prior illness or injury (battered child syndrome) of the child? (3) Are penalties and attorney's fees due under LSA-R.S. 22:657 or 22:658?

FACTS
On April 10, 1979, plaintiff, M. C. Thompson, applied to defendant for a single family hospitalization insurance policy on behalf of his son, Baxter Thompson, his daughter-in-law, and his infant granddaughter, because his son was a full-time student at NSU. Baxter and his family had formerly been insured through an employer's group insurance policy, but he had quit his job in order to attend school full time. Thus, the need for the subject policy procured by his father.
Mr. Thompson, who was vice-president of an insurance agency in Alexandria, procured the application through an agent employed by his firm and completed it in the presence of the agent, with the exception of questions regarding his daughter-in-law's vital statistics and the signatures of the applicant and spouse. In answer to the question "Are you and all other family members now in good health and without physical or mental defects or deformities?", Mr. Thompson responded "Yes." Upon completion and signing of the application by the son and daughter-in-law, it was mailed to defendant along with a premium payment, and the policy was issued April 27, 1979.
Plaintiff's infant granddaughter, Jennifer Lynn, was born February 19, 1979. On March 22, 1979, she was treated by Dr. Charles Cook for a fractured humerus. Her arm was placed in a cast, which was removed April 11, 1979, the day after completion of the application in question. On May 8, 1979, subsequent to the issuance of the policy, Jennifer was admitted to Rapides General Hospital in Alexandria for treatment of further injuries, apparently due to child abuse. She was treated by Dr. John Patton, a neurosurgeon, and by Dr. Paul Davis, orthopedic surgeon, during this time and released on May 22, 1979.
*334 The claims forms for these medical expenses were completed and submitted to defendant's service office in Monroe on July 10, 1979. The defendant advised by letter dated September 28, 1979 that it denied coverage, and it returned the premium payments already made. The reason given for denial was that Jennifer's state of health had been misrepresented on the application form, as she was being treated for the March injury when the application was submitted.

MISREPRESENTATIONS IN APPLICATION
Defendant-appellant argues the plaintiff materially misrepresented the state of Jennifer's health on the application, since he knew at the time that she had recently sustained a fractured humerus at the age of two months and was still wearing a cast for it. Plaintiff admitted at trial that he was aware of this. The defendant contends that this fact and the testimony of Dr. Wilhelmina Wise, the baby's pediatrician, proved that Jennifer suffered from a condition known as "battered child syndrome", and that she was therefore not "in good health and without physical or mental defects or deformities," as represented by the plaintiff. The insurer relies on the provisions of LSA-R.S. 22:619 (B) as the basis for denying plaintiff's right to recovery.
"B. In any application for life or health and accident insurance made in writing by the insured, all statements therein made by the insured shall, in the absence of fraud, be deemed representations and not warranties. The falsity of any such statement shall not bar the right to recovery under the contract unless such false statement was made with actual intent to deceive or unless it materially affected either the acceptance of the risk or the hazard assumed by the insurer."
In Estate of Borer v. Louisiana Health Service & Indemnity Company, 398 So.2d 1124 (La.1981), our Supreme Court construed this statute:
"False statements by the insured in the application for insurance vitiate the contract if they were made with the actual intent to deceive, or if such statements `materially affected either the acceptance of risk or the hazard assumed by the insurer.'"
Thus, the insurer's burden is to prove the falsity of the statements, and an intent to deceive or the materiality of the misstatement upon the insurer's decision to assume the risk or hazard. Ryan v. Security Industrial Insurance Company, 386 So.2d 939 (La.App. 3rd Cir. 1980); Martin v. Security Industrial Insurance Company, 367 So.2d 420 (La.App. 2d Cir. 1979), writ refused 369 So.2d 1364 (La.1979).
We find, from the record before us, that the defendant-appellant has failed to meet this burden. The baby's pediatrician, Dr. Wise, testified that during a check-up on April 10, she noted that the child, in addition to the previously treated fracture of the humerus, had minute bruises on the forearms and petechiae (tiny bloodblisters) on the eyelids (these are indicative of crying or vomiting a lot). The child was scheduled to have the cast removed the next day, and was otherwise apparently healthy, showing normal weight gain and seemingly receiving good care. Thus, defendant has failed to show that the baby was other than in good health on the date of the application, and it can hardly be said that a fracture, which was presumably healed by that time, constitutes a defect or deformity, considering that the cast was to be removed the next day.
Furthermore, even assuming the falsity of the statement, defendant failed to show intent to deceive or the materiality of the misstatement. The evidence shows that Dr. Wise, of all those treating and caring for the baby, was the only one who suspected anything amiss within the family unit. She also testified that she had very little evidence on which to base her suspicion. It was mostly a matter of intuition and experience with children and their abuse. Neither of the physicians who treated the baby's broken arm had any suspicion of child abuse.
*335 We recognize that strict proof of fraud is not required, and that intent to deceive is to be determined from the attending circumstances indicating knowledge of the falsity and recognition of the materiality of the false statement, or from circumstances which create a reasonable assumption that the materiality of the misrepresentation was recognized. Topps v. Universal Life Insurance Company, 396 So.2d 394 (La.App. 1st Cir. 1981); Watson v. Life Insurance Company of Louisiana, 335 So.2d 518 (La.App. 1st Cir. 1976).
Nevertheless, this record is devoid of any proof that the plaintiff detected, or may be assumed to have detected, anything untoward about his granddaughter's over-all state of health. Nor has any evidence been adduced to show the materiality of the claimed misstatement, i.e., that had a truthful answer been given (that the child had sustained a broken arm which was almost healed by that time), the insurer would not have contracted or would have contracted only at a higher premium. LSA-C.C. Article 1847(2); Martin v. Security Industrial Insurance Company, supra.
Therefore, we find no clear error in the trial judge's finding that there was no material misrepresentation sufficient to preclude coverage.
We move to a consideration of the defendant's contention that the medical expenses claimed by the plaintiff are not covered by the policy because they are the result of a condition pre-existing the policy, the expenses arising therefrom being excluded from coverage by a clause in the policy. It claims the testimony of Dr. Wise shows the baby was suffering from "battered child syndrome," a term apparently used by those with interest of the health and welfare of children, presumably to describe the collective problems and injuries of victims of child abuse. This is the condition battered child syndromewhich the defendant argues existed prior to the effective date of the policy which resulted in the injury for which the instant medical expenses were incurred.
The "Pre-existing Conditions Limitations for Insured and Dependents" reads as follows:
"Limitations and ExclusionsThis policy does not cover expenses in connection with any illness or injury sustained by a person, either an employee or an employee's dependent, which is contracted or first manifests itself prior to insurance becoming effective under this policy."
We are of the opinion that, under these particular facts and circumstances, battered child syndrome may not be characterized as a condition of the child in the context of an illness or injury sustained by an insured which was contracted or first manifested itself before the effective date of the policy. First, these injuries or illnesses were not caused by a condition of the child herself, but stem from a problem or condition of one or both parents. Furthermore, the fact is that the actual injuries from which the subject medical expenses arose were not contracted and did not manifest themselves until after the effective date of the policy. We therefore affirm the district court's holding that the expenses being claimed for treatment for Jennifer's injuries were not excluded by the prior illness or injury clause.

PENALTIES AND ATTORNEY'S FEES
The trial court assessed penalties and attorney's fees against the defendant pursuant to LSA-R.S. 22:657(A) which provides:
"§ 657. Payments of claims; health and accident policies; penalties
A. All claims arising under the terms of health and accident contracts issued in this state, except as provided in Subsection B, shall be paid not more than thirty days from the date upon which written notice and proof of claim, in the form required by the terms of the policy, are furnished to the insurer unless just and reasonable grounds, such as would put a reasonable and prudent business man on his guard, exist. The insurer shall make payment at least every thirty days to the assured during that part of the period of his disability covered by the policy or *336 contract of insurance during which the insured is entitled to such payments. Failure to comply with the provisions of this Section shall subject the insurer to a penalty payable to the insured of double the amount of the health and accident benefits due under the terms of the policy or contract during the period of delay, together with attorney's fees to be determined by the court. The district court of the parish where the insured lives or has his domicile shall have jurisdiction to try such cases."
It is the defendant's contention that hospitalization policies, such as the one in this case, are not health and accident policies within the meaning of this statute, and therefore penalties should be assessed here only under LSA-R.S. 22:658, which applies to all policies other than those covered by LSA-R.S. 22:657.
The latest expression of the Louisiana Supreme Court with respect to the characterization of insurance contracts providing coverage solely for hospitalization and medical expenses is found in Rudloff v. Louisiana Health Services & Indemnity Company, 385 So.2d 767 (La.1980) wherein the court, on rehearing, specifically overruled its own holding in Tabb v. Louisiana Health Services & Indemnity Company, 361 So.2d 862 (La.1978). Tabb had held that hospitalization policies did not fall within the statutory definition of health and accident policies as defined in LSA-R.S. 22:657, and thus were to be classified as miscellaneous. In overruling that particular holding of Tabb, the court reasoned in Rudloff:
"In Tabb, a policy which provided benefits for hospital and medical care, was held not to be a health and accident policy because it did not insure against injury, disablement or death. However, under the statute "health and accident insurance" also encompasses "insurance against bodily injury ... and against disablement resulting from sickness and every insurance appertaining thereto." The United States Supreme Court has held that health insurance is "an undertaking by one person for reasons satisfactory to him to indemnify another for losses caused by illness." Haynes v. United States, 353 U.S. 81, 83, 77 S.Ct. 649, 650, 1 L.Ed.2d 671, 673 (1957). This policy which provides benefits for hospital and medical care, was intended to indemnify plaintiff for those expenses occasioned by her "sickness" and is therefore a health insurance policy. See Meyer, Life and Health Insurance Law, 19:3, p. 614 (1972). Since hospitalization policies are included within the definition of health and accident policies in Louisiana law, Blue Cross was required by LSA-R.S. 22:213.2 to offer coverage for mental disorders to its policyholders. To the extent that it conflicts with this holding, Tabb v. La. Health Services & Indem. Co., 361 So.2d 862 (La., 1978) is overruled."
Defendant argues that the characterization in Rudloff should be limited to the Supreme Court's determination that LSA-R.S. 22:213.2 is applicable to such policies, and suggests that the term "health and accident" takes on a different meaning in the context of the penalty provisions of R.S. 22:657 than the one ascribed to it in Rudloff. The cases cited by the defendant as the better reasoned decisions all simply followed the Tabb rule and were rendered before Rudloff. The court's language in Rudloff was unequivocal when it stated that the definition of health and accident policies under Louisiana law include hospitalization policies. Inasmuch as R.S. 22:657 is applicable to "all claims arising under the terms of health and accident contracts issued in this state," we find, as we did in Lucito v. Louisiana Hospital Services, Inc., 392 So.2d 700 (La.App. 3rd Cir. 1980), that it is applicable to the claim in the instant suit.
This brings us to the defendant's final contention: that the trial court erred in holding the defendant was unreasonable in its refusal to pay the claim. Clearly, the insurer is entitled to refuse payment if it has just and reasonable grounds, sufficient to put a reasonable prudent businessman on his guard. Whether or not the insurer's reasons for refusal are just and reasonable grounds is a question of fact, to be determined *337 from the individual facts and circumstances of each case. Lucito v. Louisiana Hospital Services, Inc., supra; Poche v. Louisiana Health Services & Indemnity Company, 391 So.2d 17 (La.App. 3rd Cir. 1980), writ denied 396 So.2d 885 (La.1981).
We find that the trial court was not clearly wrong in finding the defendant unreasonable in its denial of the claim. The mere showing that Jennifer received an injury in March, and was in the last stages of routine treatment therefor when the application was submitted, does not alone constitute just and reasonable grounds to assume that the baby was not in good health and free of physical deformities. The trial court therefore acted properly in its assessment of penalties and attorney's fees pursuant to LSA-R.S. 22:657.
For the above and foregoing reasons, the judgment of the trial court is affirmed. All costs of this appeal are assessed against the defendant-appellant.
AFFIRMED.