YELVERTON, Judge.
An insured sued his health insurer for medical insurance benefits. A jury found that benefits were due, and that the insurer was arbitrary and capricious in failing to pay, invoking the statutory penalty (double the benefits) and an award of attorney’s fees. The insurer appeals the awards, and the insured answered the appeal seeking an *955 increase in attorney’s fees incurred on appeal. We affirm in all respects, and award additional attorney’s fees for this appeal.
On February 4, 1986, Larry Parker was issued a health insurance policy by Western Fidelity Insurance Company (Western Fidelity) after being solicited by one of its agents. In the application Parker stated that he had a gallbladder attack in 1979 and while hospitalized, he was diagnosed as having diabetes. He stated that he was on a diet and insulin for several months, and that no further treatment or medication “was needed or applied”. The policy excluded coverage for Parker’s diabetic condition. It did not exclude coverage for the gallbladder.
In July 1986 while visiting in Houston, Texas, Parker started having chest pains. He saw a doctor who thought he was having a heart attack and sent him to the hospital. Three days later Parker was diagnosed as having acute cholecystitis (blocked bile ducts) which caused gangrene in the gallbladder. Dr. Edward Rensimer of Houston removed the gallbladder. As a result of this surgery, Parker incurred $37,334.40 in medical expenses.
In August 1986 he filed an application for medical benefits. Western Fidelity denied benefits taking the position that Parker’s gallbladder condition was preexistent under the terms of .the policy.
After a trial a jury returned a verdict finding Western Fidelity liable for medical benefits, penalties and attorney’s fees. Pursuant to a stipulation, the trial judge determined the amount of medical benefits and assessed the amount of the award of attorney’s fees. The trial judge calculated the medical benefits to be $33,987.60 after subtracting the $1,000 deductible under the policy and the expenses relating solely to Parker’s excluded diabetes. He awarded $8,457.50 as attorney’s fees.
Western Fidelity’s appeal raises five specifications of error. The issues relate to coverage under the policy, instructions to the jury, the arbitrariness of the insurer’s conduct, admission of certain evidence, and calculation of benefits. We will discuss these issues under their appropriate headings.
COVERAGE
Western Fidelity’s initial reason for denying coverage was that the medical expenses were for a preexistent condition. If the gallbladder operation was for a preexis-tent condition as defined by the policy, the insurer would not be liable.
The policy defined a preexisting condition as follows:
Pre-existing [sic] condition means the existence of symptoms which would cause an ordinarily prudent person to seek diagnosis, care or treatment within a five year period prior to the effective date of the policy; or a condition for which medical advice or treatment was recommended by or received from a physician within a five year period prior to the effective date of the policy.
Where an insurer denies coverage based on a policy exclusion, it bears the burden of proving facts which place the claim within the exclusion. Richard v. Old Southern Life Ins. Co., 502 So.2d 1168 (La.App. 3rd Cir.1987).
There were five witnesses to the facts. Parker and his wife testified in the presence of the jury. The testimony of three doctors was presented to the jury by videotaped depositions.
There was no evidence that Parker ever went to a doctor within five years before February 4, 1986. He and his wife testified that during that five years he might have had an upset stomach, back pain or other aches — Parker aged from 59 to 64 during that five years — , but they declared that nothing occurred of sufficient concern to send him to a doctor. He had no illness which he could attribute to his gallbladder.
Dr. Jack Cappel, Parker’s treating physician for the gallbladder attack in 1979, testifying without his notes, stated that he probably recommended that Parker stay on a low fat diet, which had already been prescribed by another doctor due to Parker’s diabetic condition. He agreed that he probably told Parker that sooner or later *956 he should get the gallbladder removed. He also testified that Parker could well not have had any gallbladder symptoms between the 1979 attack and the 1986 attack.
Dr. Edward Rensimer, Parker’s treating physician for the 1986 gallbladder attack, testified that in his initial consultation he noted that Parker had been a mainly diet-controlled diabetic prior to the 1986 gallbladder episode. He also testified that it was possible that no gallbladder symptoms manifested between 1979 and 1986, although he thought this would be unusual. He testified, however, that gallbladder symptoms can be quite subtle, and not be such as to require the patient to seek treatment.
Dr. Alberto Roca, a pathologist in Houston, Texas, testified that gallstones don’t always cause symptoms that would cause a person to seek treatment. He testified that a person could have a gallstone all his life and never know it.
There was no other testimony on the subject of the preexisting condition. This testimony, along with the application for insurance, constituted the evidence that went to the jury. The jury was instructed that the policy’s definition of preexisting condition was the existence of symptoms which would cause an ordinarily prudent person to seek diagnosis, care or treatment within a five year period prior to the date of the policy, or a condition for which medical advice or treatment was recommended by or received within a five year period prior to the date of the policy. With this evidence and this instruction before it, the jury returned a general verdict answering yes to the question whether Western Fidelity was liable to the plaintiff for his medical expenses.
Our review of this finding of fact is regulated by the manifest error rule. Dear v. Blue Cross of Louisiana, 511 So.2d 73 (La.App. 3rd Cir.1987). The.jury’s finding that Parker’s gallbladder condition was not preexisting according to the terms of the policy is supported by all of the testimony.
Although it was not raised initially as a basis for denying coverage, Western Fidelity at the trial raised the additional defense that Parker intentionally made a material misrepresentation to it by not disclosing on the February 4, 1986, application, that Dr. Cappel placed him on a low fat diet and recommended surgery. It is the insurer’s contention that this material misrepresentation voided the policy.
For an insurer to avoid liability under its policy, it must prove that the insured intentionally made a material misrepresentation. To determine whether there has been an intent to deceive, courts look to the surrounding circumstances indicating the insured’s knowledge of the falsity of the representation made in the application and his recognition of the materiality of misrepresentation, or from circumstances which create a reasonable assumption that the insured recognized the materiality. Cousin v. Page, 372 So.2d 1231 (La.1979); Jamshidi v. Shelter Mut. Ins. Co., 471 So.2d 1141 (La.App. 3rd Cir.1985). In the present case Dr. Cappel, testifying without his file, stated that he probably suggested to Parker in 1979 that at some future date he consider having his gallbladder removed. He also thought he would have recommended that Parker stay on the low fat diet already prescribed for his diabetes. In the application Parker made a full disclosure of his gallbladder attack in 1979 and Dr. Cappel’s diet recommendation. He stated thereon also that no further treatment was needed. Dr. Cappel testified he did not have written records of what he told Parker in 1979, but he imagined it would have been something similar to advice that he could have surgery on an elective basis within the next one or two years if he wanted to.
Parker did not intentionally misrepresent any material health fact on his application. The application was filled out over six years after the 1979 gallbladder attack. He disclosed on the application that he had a gallbladder attack in 1979. He included his course of treatment and further stated that he had not had any complications since. Until the 1986 attack Parker had no trouble with his gallbladder, at least nothing that he recognized as a gallbladder *957 symptom, and nothing of sufficient severity to send him to a doctor. He was not on medication nor was he treated between the 1979 and the 1986 attacks. Accordingly, we find, as this properly instructed jury found, that Western Fidelity failed to prove that Parker intended to deceive it.
JURY INSTRUCTION
The defendant complains that the trial judge gave misleading or confusing jury instructions concerning La.R.S. 22:657, and that we should accordingly disregard the jury’s verdict. The statute relates to the payment of claims under health and accident policies, and provides a penalty of double the amount of health benefits, together with attorney’s fees, if the insurer’s failure to timely pay is unjust and unreasonable. The trial judge explained the statute to the jury and told the jury that, in order to award a penalty to the plaintiff, it had to first find that Western Fidelity’s failure to pay was unjust and unreasonable, and that what constitutes just and reasonable grounds should be determined from the circumstances of the case. The judge told the jury that if they found that Western Fidelity’s interpretation of the policy was reasonable, then they had to find that the denial of the claim was not arbitrary and capricious and that penalties would not be imposed. The judge explained that the mere fact that the jury might disagree with the defendant’s interpretation of the policy did not mean that penalties must be awarded.
Neither side objected to these instructions. During the course of its deliberations, the jury sent word to the trial judge that they wanted a definition of arbitrary and capricious. The court sent word back to the jury telling them that if they would return to the courtroom he would give them further instructions. They responded with another message stating that they wanted to meet with him privately for that definition. When the court sent word that it could not meet with them privately, they announced that they did not want to return to the courtroom, and they proceeded to reach their verdict. At no time did either party register an objection to the way the trial court handled this proceeding. A party may not assign as error the giving or the failure to give an instruction unless he makes an appropriate objection thereto. La.C.C.P. art. 1793(C). Western Fidelity never objected and it is now precluded from raising its objection on appeal.
PENALTIES AND ATTORNEY’S FEES
The jury made a finding that the insurer acted arbitrarily and capriciously in denying payment of the claim. Western Fidelity argues that this was clear error. Its argument as to this issue is largely a repetition of its coverage defenses discussed above.
LSA-R.S. 22:657 governs the award of penalties and attorney’s fees to be assessed against an insurer who fails to pay a claim without just and reasonable grounds, such as would put a reasonable and prudent businessman on his guard. Whether just and reasonable grounds exist is purely a factual matter. Lucito v. Louisiana Hospital Service, Inc., 392 So.2d 700 (La.App. 3rd Cir.1980). Each case must be considered on its own facts and circumstances and the.decision will not be disturbed unless it is clearly wrong. Id.
Steve Stokes, its claims manager, testified for the insurer, explaining its reasons for denying the claim. Stokes was in charge. He testified that he got the hospital bill on August 22, and denied coverage on November 17. The first and main reason, he said, for denying the claim was that the gallbladder problem was preexistent. When pressed regarding his policy’s definition of preexistent, he admitted that there was no evidence of the existence of any symptoms for the five years before February 4, 1986, that would have caused an ordinarily prudent person to seek diagnosis, care or treatment. He persisted, however, in stating that the company would not have issued the policy had Parker been truthful on his application concerning the diet, and had Parker not been untruthful by stating that he was in good health. It was Stokes’ view that being in good health and having a gallbladder problem that *958 might one day need an operation, were inconsistent facts.
The jury evidently concluded that the avoidance of fatty foods Dr. Cappel recommended in 1979, which was already part of Parker’s treatment for the unrelated diabetes, was not treatment for gallbladder trouble, and that the insurer was unreasonable in considering it such to avoid coverage. The jury evidently also considered it unreasonable for Western Fidelity to think it had been misinformed or misled by the application. The jury found this conduct arbitrary and capricious, and on this record we cannot say that this finding was clearly wrong.
EVIDENCE
Western Fidelity claims that a letter to it from the Louisiana Insurance Commissioner was improperly admitted into evidence and shown to the jury. The letter threatened administrative action if the insurer did not respond to earlier repeated requests for information about the claim.
Parker, during his testimony, at the beginning of the trial mentioned that he himself had corresponded with the office of the insurance commissioner. This testimony went no farther and was harmless, and no objection was made. Later, when defendant’s claims manager was testifying on direct for the defendant, that witness was asked whether the insurer had ever responded to the commissioner’s inquiries. Following an affirmative reply, the witness was then asked if any further action was taken by the commissioner, to which the answer was no.
At this point the implication was before the jury that no further correspondence took place between the insurer and the commissioner. This was not true, and counsel for the plaintiff wanted the jury to know it was not true. The trial judge permitted counsel, over objection, to ask questions regarding the further correspondence. After these answers were given, the plaintiff then offered the correspondence itself in evidence. Counsel for the defendant stated that it had no objection to these offerings.
Under these circumstances there is nothing before this court to review.
CALCULATION OF BENEFITS
Lastly, Western Fidelity contends that the trial judge erred in calculating the amount of benefits due under the policy. It argues that the trial judge included a portion of Dr. Roca’s bill for laboratory charges related to Parker’s diabetic condition.
The record indicates that all of Dr. Roca’s charges except for some of the glucose tests were related to Parker’s gallbladder condition as well as his diabetes. Accordingly, we find no manifest error in the trial judge’s calculations.
ANSWER TO THE APPEAL
Parker answered the appeal seeking additional attorney’s fees incurred as a result of this appeal. This court has awarded such attorney’s fees in the past in recognition of the additional expenses incurred by a successful litigant in the lower court who seeks to protect his rights on appeal. Slay v. Old Southern Life Ins. Co., 498 So.2d 1129 (La.App. 3rd Cir.1986), writ denied, 501 So.2d 235 (La.1987). We increase attorney’s fees in the amount of $750.
CONCLUSION
For the foregoing reasons, the judgment of the trial court is amended to increase attorney’s fees by an additional $750 for services rendered on this appeal. In all other respects the judgment of the trial court is affirmed. Western Fidelity will pay costs of this appeal.
AFFIRMED AS AMENDED.