386 So.2d 939 (1980)
Rosa Mae RYAN, Plaintiff-Appellee,
v.
SECURITY INDUSTRIAL INSURANCE COMPANY, Defendant-Appellant.
No. 7548.
Court of Appeal of Louisiana, Third Circuit.
May 21, 1980.
*940 Talbot, Sotile, Carmouche, Waguespack & Marchand, Victor L. Marcello, Donaldsonville, for defendant-appellant.
Camp, Carmouche, Palmer, Barsh & Hunter, Skipper Drost, Lake Charles, for appellant.
Cox & Cox, Rex D. Townsley, Lake Charles, for plaintiff-appellee.
Before SWIFT, STOKER and LABORDE, JJ.
STOKER, Judge.
This is a contract action. Plaintiff, Rosa Mae Ryan, instituted this suit against Security Industrial Insurance Company seeking recovery under two contracts of insurance. Following the trial, judgment was rendered for plaintiff in the sum of $4,600.00. Penalties were also imposed for the insurer's refusal to pay the claims. Defendant has perfected this appeal from the lower court's ruling.
The facts show that on October 14, 1977, Bill Brantley, an agent for defendant, visited Gracie Ryan at her mother's residence. Brantley's visit was in response to an inquiry from Ms. Ryan indicating an interest in securing policies of life insurance and burial insurance. In due course, Gracie Ryan applied for two policies, a policy of life insurance providing coverage of $4,000.00 and a policy of burial insurance providing coverage of $600.00. Gracie Ryan named her mother, Rosa Mae Ryan, as beneficiary of both policies. The following procedure was used to fill out the applications: Mr. Brantley posed questions to Gracie Ryan, and her responses were written on the applications by Brantley. After filling out the applications, Brantley presented the forms to Ms. Ryan for her signature. Gracie Ryan signed the applications but did not review the applications as completed by Mr. Brantley. After signing the applications, Ms. Ryan paid Brantley the initial premiums of each policy.
The life insurance policy was issued on October 15, 1977. The burial insurance policy was issued on January 15, 1978. All premiums were paid timely as they became due.
On January 4, 1978, Gracie Ryan died. The cause of death was listed as sepsis, acute renal failure, and disseminated intravascular coagulation. Following Gracie Ryan's death, Rosa Mae Ryan, the beneficiary of the policies, filed a claim for coverage under the policies. The plaintiff's claim was rejected. Thereafter, plaintiff instituted this action.
Defendant resists liability under the policies for several reasons. Defendant contends *941 that Gracie Ryan made material misrepresentations in both applications. Defendant resists coverage under a "good health" provision in both insurance contracts. Finally, defendant contends that it is not liable under the burial insurance policy because it was not issued until after Gracie Ryan's death.
MATERIAL MISREPRESENTATION
LSA-R.S. 22:619(B) provides,
In any application for life or health and accident insurance made in writing by the insured, all statements therein made by the insured shall, in the absence of fraud, be deemed representations and not warranties. The falsity of any such statement shall not bar the right to recovery under the contract unless such false statement was made with actual intent to deceive or unless it materially affected either the acceptance of the risk or the hazard assumed by the insurer. [Emphasis added]
In order for an insurer to avoid liability on the basis of material misrepresentations the insurer must meet a three-tiered burden. It must be shown that the statements were false. Second, the insurer must establish that the representations were made with an actual intent to deceive. Third, the insurance company must establish that these misstatements materially affected the risk assumed by the insurer. Martin v. Security Industrial Insurance Company, 367 So.2d 420 (La.App. 2nd Cir. 1979), writ refused 369 So.2d 1364 (La.1979).
In the present case, defendant alleges that Gracie Ryan gave false answers to questions 6 and 11 on both applications. Question 6 seeks information as to whether the applicant is in good health "without any impairment". Question 11 seeks information concerning any diseases or disorders, such as paralysis, which the applicant might have. It is not disputed that the answers to the questions, insofar as Gracie Ryan is concerned, were not accurate. At the time the applications were filled out, Ms. Ryan was paralyzed from the waist down. Ms. Ryan's paralysis is not mentioned in the form.
However, it is well settled that the acts of an insurance agent in filling out an application form falsely are the acts of his principal, the insurer, and they do not bind the innocent insured nor bar recovery by him or his beneficiaries. Cloud v. Security General Life Insurance Co., 352 So.2d 406 (La.App. 3rd Cir. 1977); Frugeé v. Woodmen of the World Life Insurance Society, 170 So.2d 539 (La.App. 3rd Cir. 1965); Morein v. American Physicians Insurance Company, 192 So.2d 887 (La.App. 3rd Cir. 1966).
In the instant case, Rosa Mae Ryan testified that Gracie Ryan informed the agent she was paralyzed from the waist down. Ms. Ryan's testimony was corroborated by her daughter and a disinterested witness who was visiting in the home of the Ryans at the time the application was completed. Bill Brantley, the agent who completed the form, was not summoned by the insurer to contradict this testimony.
An examination of the record reveals that, although the application form contained inaccurate information, it was the result of the agent falsely filling out the application. The agent's acts do not bar the beneficiary from recovery. In rejecting the insured's defense of material misrepresentation, the trial judge stated, "The court finds, likewise, that the defendant clearly failed to establish that the Ryans sought at any time to deceive the insurer." A thorough examination of the record reveals that the judge's finding is correct.
In support of its defense of violation of LSA-R.S. 22.619B, defendant relies heavily on Johnson v. Occidental Life Insurance Company of California, 368 So.2d 1032 (La. 1979) and Watson v. Life Insurance Company of Louisiana, 335 So.2d 518 (La.App. 1st Cir. 1976). Defendant's theory in this regard is that the deceased was guilty of misrepresentation and fraud in falsely answering certain questions on the application forms for the insurance. A similar defense was dealt with in Martin v. Security Industrial Insurance Company, supra, and we think the contentions of defendant on this *942 point are fully answered there. Nevertheless, we think the Johnson and Watson cases can be distinguished on their facts. In both of these cases, the applicants filled out the applications themselves.
In Johnson, the insured responded to a mail solicitation from the insurance company and was furnished with an application for mortgage cancellation group life insurance. The applicant, Mrs. Claray Smith, filled out the application herself. In Watson, the deceased insured did the same with reference to an application for credit life insurance. In both cases, the inference was clear that misrepresentations were made with the intent to deceive the insurer. Here, Gracie Ryan did not fill out the application. No false representation with intent to deceive has been shown.

GOOD HEALTH CLAUSE
The insurer resists liability on the life insurance policy on the grounds of a "good health" clause found in the policy. The clause provides, in essence, that the contract of insurance is not effective until the first premium has been paid and accepted by the company and the policy has been delivered and accepted by the insured while in good health.
Defendant contends that coverage never became effective because Gracie Ryan was not in good health at the time of the issuance of the life insurance policy, October 15, 1977. However, the issue is whether Gracie Ryan was in good health at the time of delivery of the policies.
Dennis Cavallaro, an employee of defendant, testified that it was company policy, to give the policy of insurance, after issuance, to the agent for delivery to the insured. In the present case, it appears that Mr. Brantley failed to deliver the policy of life insurance to Gracie Ryan after its issuance. However, delivery of an insurance policy may be actual or constructive. Pruitt v. Great Southern Life Insurance Company, 202 La. 527, 12 So.2d 261 (1942). In the present case, since no restrictions were placed on Brantley concerning delivery of the policy after its issuance, the delivery of the policy to Brantley amounted to constructive delivery of the policy to Gracie Ryan.
Therefore, the question presented is whether the insurer proved that Gracie Ryan was not in good health at the time she received delivery of the policy. In Martin v. Security Industrial Insurance Company, supra, the court, faced with the interpretation of a good health clause which required the insured to be in good health at the time of the issuance of the policy, stated that the insurer must prove by "clear and convincing proof" that the insured was not in good health on the effective date of the policy. In Martin, although the insurer proved that the insured had suffered from heart trouble prior to the issuance of the policy, the court held that the insurer failed to prove that the insured was not in good health on the date of the issuance.
In the present case, medical evidence introduced revealed that Gracie Ryan was not in good health as of December 18, 1977, when she was hospitalized for treatment of various disorders. However, the insurer presented no evidence as to when the insured received delivery of the life insurance policy. Since no evidence was presented as to when the policy was delivered to Ms. Ryan, the insurer failed to prove by clear and convincing evidence that Gracie Ryan was not in good health at the date of delivery. Although Ms. Ryan was paralyzed from the waist down as of the date of the issuance of the life insurance policy, this is not proof that she was not in good health. The trial court did not err in rejecting the insurer's defense based on the "good health" clause.
As the Martin case illustrates, an extremely heavy burden is placed on an insurer who attempts to avoid liability under a "sound health" or "good health" clause. There it was said that the courts "required clear and convincing evidence that the insured was not in sound health on the effective date of the policy." The court in Martin discussed several cases in which courts had rendered ineffective certain policies of *943 insurance and then distinguished them as follows:
In the cases summarized above which upheld the sound health provision and rendered the policy ineffective, there was either positive medical testimony as to the insured's condition of health on the date of issuance of the policy, or other evidence so strong that no other conclusion could be reached than the insured was in unsound health on that date.
Permissible inferences which may be made in ordinary cases, as laid down by Jordan v. Travelers Insurance Company,[1] 257 La. 995, 245 So.2d 151 (1971), may not be made in cases involving "sound health" policies. The restrictive rule evidently reflects strong policy considerations growing out of the nature of sound health insurance contracts and the frequent lack of expertise or understanding on the part of applicants who depend upon agents of the companies to look after their (the applicant's) interests.

BURIAL POLICY
The insurer contends that coverage was not provided under the burial policy because it was not issued until after Gracie Ryan's death. The facts show that the application for the burial policy was taken on October 14, 1977. However, although premiums were paid until plaintiff's death on January 4, 1978, the policy was not issued until January 15, 1978.
Although an insurer is granted a reasonable time to accept or reject an application, a period of 90 days is not a reasonable time. Since the insurer did not issue or reject the policy within a reasonable period of time, the insurer is estopped from denying coverage on the ground that the policy was not issued until after the insured's death. It would be inequitable to allow the insurer to receive, retain, and enjoy the benefits of premiums for a burial insurance policy, without issuing the policy, and then allow the insurer to deny coverage once the insured dies. See Sampson v. Life & Casualty Insurance Company of Tennessee, 175 So. 148 (Orl.La.App.1937); Williams v. Unity Industrial Life Insurance Company, 181 So. 210 (Orl.La.App.1938).

PENALTIES
Defendant contends that the trial judge erred in imposing penalties for its refusal to pay plaintiff's claims.
LSA-R.S. 22:656 provides,
All death claims arising under policies of insurance issued or delivered within this state shall be settled by the insurer within sixty days from the date of receipt of due proof of death and should the insurer fail to do so without just cause, then the amount due shall bear interest at the rate of six per cent per annum from date of receipt of due proof of death by the insurer until paid.
In Ducote v. Life Insurance Company of Louisiana, 245 So.2d 531 (La.App. 3rd Cir. 1971) the court held, that if the insurer had reasonable grounds to believe that it was not liable under a "good health" provision of an insurance contract, the award of penalties under LSA-R.S. 22:656 was not proper.
In the present case we do not believe that the Ducote case has any applicability. We have held that the defendant insurer could not deny recovery on the policies because the acts of the insurer's agent in falsely filling out the application forms were the acts of his principal, the insurer, the defendant here. Therefore, the false answers do not bind the innocent insured nor bar recovery by her or her beneficiaries. We have so held on the basis of the Cloud, Frugeé and Morein cases.
In the Morein case we said:

*944 The policy defense that there was a misrepresentation is of course completely without merit. The acts of an insurance agent in filling out an application form falsely are the acts of his principal, the insurer, and they do not bind the innocent insured nor bar recovery by him or his beneficiaries. Frugeé v. Woodmen of the World Life Insurance Society, La.App., 3 Cir., 170 So.2d 539, and decisions there cited.
* * * * * *
The insurer apparently preferred to resist liability upon its technical and tenuous defense rather than to evaluate the legal and factual inefficacy of its position and then pay within thirty days of proof of loss and demand as required by statute. The courts have consistently held health and accident insurers liable for statutory penalties where for similar reasons they have denied liability to their policyholders upon legal or factual defenses which upon investigation would prove to be insubstantial. Bankson v. Mutual Ben. Health & Accident Ass'n, 208 La. 1008, 24 So.2d 59; Miller v. Preferred Life Insurance Co., La.App., 2 Cir., 107 So.2d 323. See also Gleason v. Bankers Life & Casualty Co., La.App., 2 Cir., 147 So.2d 86.
The Cloud case presented facts very similar to those presented here. In that opinion, which came from this court, we said:
In the instant case defendant clearly failed to establish that the Clouds made any material misrepresentations or that they are at any time sought to deceive the insurer. Rather, the record amply supports the trial court's finding that the false statements were the product of defendant's agent and that defendant is bound thereby.
The trial court determined that plaintiff is entitled to penalties and attorney's fees under LSA-R.S. 22:657(A). We agree with this conclusion and are pleased to adopt the learned trial judge's reasons in support of such finding:
"Mrs. Cloud has asked for penalties, being the additional sum of $1,500.00, plus attorneys fees.
The record of evidence herein convinces this Court that any reasonable investigation of Mrs. Cloud's claim by the insured would have disclosed that Mrs. Alma Cloud would be entitled to recover the benefits under this policy. No employee of defendant or independent adjuster made such a thorough investigation. The insurer took the position that the error placed in the application by their agent (who, according to the record of evidence, they did not consult) was proof sufficient to exercise their privilege to declare the major medical policy null and void as if never written.
L.R.S. 22:657(A) permits the assessment of penalties and attorneys fees unless the insurer's refusal to pay the claim within 30 days is based on `just and reasonable grounds, such as would put a reasonable prudent businessman on guard, exist.' The policy defense that there was misrepresentation this Court has held was without merit. The acts of their insurance agent in filling out the application form with incorrect data when the agent had been given the correct facts are the facts of his principal, the insurer. Other than relying on the application, the insurer made no effort to prove any misrepresentation by Mrs. Cloud.
The insurer failed to properly investigate and evaluate the legal and factual efficacy of its position and preferred to resist liability upon its technical and tenuous defense of misrepresentation. Such action on the insurer's part renders it liable for the statutory penalties." See Morein v. American Physicians Ins. Co., 192 So.2d 887 (La.App. 3rd Cir. 1966).
The Frugé case did not involve the awarding of penalties and attorney's fees, and held only that the insurer could not avoid recovery on a policy. Frugé did, however, announce the policy that "if the agent by mistake, fraud or negligence inserts erroneous or untrue answers to the questions *945 contained in the application, these representations bind the insurer but are not binding upon the insured ..." Evidently, the rationale of the Cloud and Morein cases is that it would be inconsistent, on the one hand, to hold that an insurer is bound by the acts of its agent, which it must know at the time a claim arises, and to hold, on the other hand, that the insurer can make out just and reasonable grounds for resisting recovery on the basis of proof of poor health of the insured. Any reasonable evaluation of the claim should convince the insurer that, regardless of the facts, it is bound by its agent's acts. Therefore, the insurer should know that it is bound on the policy. Such, we believe, is the case here. Under the circumstances, the insurer was arbitrary and capricious in not paying the claims in reliance on the sound health clause in the policies.
Proper evaluation of the situation with respect to the burial insurance policy and the defense that the policy was not issued until after the death of Gracie Ryan should also have convinced the insurer that the claim must be paid.
For the foregoing reasons we agree that the trial court properly awarded statutory penalties. Therefore, the judgment of the trial court will be affirmed. The costs of this appeal are assessed to the defendant-appellant.
AFFIRMED.
SWIFT, J., dissents as to the award on the burial policy, but otherwise concurs.
NOTES
[1] Jordan v. Travelers Insurance Company, supra, crystalized the following standard for meeting the burden of proof or sufficiency of evidence: "... [P]roof by direct or circumstantial evidence is sufficient to constitute a preponderance, when, taking the evidence as a whole, such proof shows that the fact or causation sought to be proved is more probable than not."