387 So.2d 649 (1980)
Carl JENKINS and Dorman Jenkins d/b/a Jenkins Brothers Asphalt
v.
DICON, INC. and Travelers Indemnity Company.
No. 13477.
Court of Appeal of Louisiana, First Circuit.
July 7, 1980.
*650 John N. Gallaspy, Bogalusa, for plaintiffs.
France W. Watts, III, Franklinton, for defendants.
Before COVINGTON, LOTTINGER and COLE, JJ.
LOTTINGER, Judge.
This is a suit by Carl and Dorman Jenkins, doing business as Jenkins Brothers Asphalt, against Dicon, Inc. and Travelers Indemnity Company, for money allegedly due under a contract to hard-surface a shopping center parking lot. From a judgment awarding plaintiffs $16,577.75, defendants have appealed, and plaintiffs have answered the appeal.
In early 1974, Dicon, Inc. became the general contractor on the Shopyard Square Shopping Center project in Bogalusa, Louisiana, after the first general contractor defaulted. Dicon's responsibility to the project's owner, the Mitchell Company, was to complete the buildings and to hard-surface the parking lot on the shopping center.
On June 4, 1974-following some verbal communications with Dicon representatives-the Jenkinses submitted a proposal to hard-surface the lot for $3.50 per square yard. Dorman Jenkins testified that an original verbal proposal of $5.00 to $6.00 per square yard had been discarded when Dicon representatives informed him of the limited amount of funds available for hard-surfacing the lot. The original proposal including six inches of compacted base material and two inches of asphalt overlay. The proposal actually made provided for only a two inch base with a one and one half inch asphalt overlay.
Jenkins said he repeatedly told Dicon representatives that the two inch base and one and one half inch overlay would be insufficient to handle the traffic that would be using the parking lot, particularly the heavy delivery trucks which serviced the retail establishments. He said a stronger base was needed to compensate for the soft clayish soil which was natural to the area. A week after the Jenkinses submitted their proposal, Dicon sent them a standard form subcontract. The subcontract called for 28,000 square yards of hard-surfacing at $3.50 per square yard, but also contained other provisions requiring the Jenkinses to adhere to the architect's plans and specifications.
Dorman Jenkins said he refused to sign the subcontract because the plans and specifications called for much more base material and asphalt overlay than Dicon had money to pay for. He said he and his brother soon made a verbal agreement with Dicon personnel to perform the work, with the understanding that the base would be only two inches and the overlay one and one half inches.
Jenkins also testified that much of the asphalt was laid while the base was wet and soggy-a practice against which he repeatedly counseled Dicon representatives. However, he claimed that Dicon, under the owner's pressure to complete the shopping center as soon as possible, required him to lay the asphalt during the adverse conditions. The Jenkinses and three other witnesses *651 testified that on one occasion, after a truck and asphalt laying machine had become bogged down in the mud, a Dicon representative told the crew to continue laying the asphalt, even though rain was falling. After warning the Dicon representative that the chances of the hard-surface holding were slim, the Jenkinses obeyed the order.
The Jenkins brothers were released from the job in early 1975, but their last invoice of $8,662.50 and a 10% retainage fee of $7,915.25 were withheld by Dicon, which claimed that the Jenkinses had not performed according to plans and specifications. Much of the hard-surfacing broke under stress, and Dicon eventually paid another firm $47,791.63 to remedy the defects.
The Jenkinses filed a lien against the property and brought this suit soon thereafter. Dicon answered and reconvened, claiming the Jenkinses owed it the amount paid to remedy the defects. The trial judge found that "the contractor received from the Jenkins Brothers the quality of job that he bargained for . . ." He found additionally that the plaintiffs had advised the contractor about laying asphalt under wet and soggy conditions, but that the contractor insisted that the work proceed. The testimony showed that "the failure of the asphalt to hold up in various places resulted from it having been put down on a wet or soggy base, with a very thin layer of asphalt having been put down, apparently as required by the contractor's budget."
This case presents questions of fact. The trial judge viewed the witnesses, and it is apparent from his reasons for judgment that he believed the plaintiffs and their witnesses. We have thoroughly reviewed the record, find ample support for the trial judge's decision, and conclude it is not clearly wrong. The record shows clearly that Dicon had limited funds to hard-surface the lot and was pressed for time to complete the job. Dicon requested-and its representatives accepted-work of an inferior nature. The Jenkinses repeatedly warned Dicon of the problems which would arise because of the insufficient materials and the adverse weather conditions, but Dicon insisted on moving ahead. Dicon, indeed, got what it paid for. It made a bad deal. But it still must pay the price.

ATTORNEY'S FEES
The Jenkinses, in a supplemental and amending petition, also sought attorney's fees under La.R.S. 9:2781[1] and, alternatively, under La.R.S. 9:3902.[2] Plaintiffs answered the appeal seeking attorney's fees as well as damages for a frivolous appeal.
*652 La.R.S. 9:2781 allows reasonable attorney's fees against any person who fails to pay an open account within 30 days of receipt of written demand. La.R.S. 9:3902 allows ten per cent attorney fees against a surety who fails to pay his obligation, provided the creditor "has employed an attorney for the purpose, has made written amicable demand on the principal and surety and [30] days have elapsed from their receipt thereof without payment being made, and the full amount claimed in the demand is recovered."
The trial judge disallowed all requests for attorney fees. We do not question his decision disallowing attorney fees under La.R.S. 9:2781 because the contract between the Jenkinses and Dicon was not in the nature of an open account. It was a one-shot contract for paving, with a relatively firm price agreed to in advance.
However, we are of the opinion that plaintiffs' claim for attorney fees under La. R.S. 9:3902 has merit. The plaintiffs have complied with all the provisos of that statute, and the defendant surety company did not pay the claim as required under law.

FRIVOLOUS APPEAL
We find no merit in the request for damages for a frivolous appeal. Unless it manifestly appears that the appeal was taken solely for delay, or that there was no serious belief in the merits of the appeal, damages will not lie. Jackson v. East Baton Rouge Parish School Board, 348 So.2d 739 (La.App. 1st Cir. 1977).
Therefore, for the above and foregoing reasons, the decision of the trial court allowing the plaintiffs' main demand of $16,577.75 is affirmed. The portion of the trial court's judgment denying attorney fees is reversed, and attorney fees in the amount of $1,657.77 is awarded to the plaintiffs against Travelers. All costs of this appeal are taxed against defendants-appellants.
AFFIRMED IN PART, REVERSED IN PART, AMENDED AND RENDERED.
NOTES
[1] La.R.S. 9:2781 provides:

"When any person fails to pay on open account within thirty days after receipt of written demand therefor correctly setting forth the amount owed and a copy of the invoices in support thereof, that person shall be liable for reasonable attorney fees for the prosecution and collection of such claim when judgment on the claim is rendered in favor of the claimant. Evidence of receipt of written demand by the spouse of the debtor when they are living together as husband and wife on behalf of the debtor may be introduced as evidence of written demand on the debtor.
"If delivery of written demand on the debtor is attempted, but not accomplished because circumstances made delivery of written demand impossible, a notation, on the envelope containing the written demand, made by the person attempting delivery stating the date of the attempted delivery, the reasons why delivery could not be accomplished along with the initials of the person attempting delivery and making said notation may be introduced as evidence of written demand on the debtor, and if the judge in his discretion finds that sufficient evidence of due diligence in delivery of written demand has been made, he may make a conclusion of written demand for purposes of justice and find that there has been written demand on the debtor."
[2] La.R.S. 9.3902 provides:

"If the surety on a bond fails to pay his obligation and it becomes necessary for the creditor to sue thereon, the latter shall be entitled to ten per cent attorney's fees on the amount recovered, provided he has employed an attorney for the purpose, has made written amicable demand on the principal and surety and thirty days have elapsed from their receipt thereof without payment being made, and the full amount claimed in the demand is recovered.
"This Section shall not affect the right to recover interest and costs as otherwise provided by law."