419 So.2d 1254 (1982)
Dorothy Young BERTRAND, et al., Plaintiff-Appellee,
v.
PROTECTIVE LIFE INSURANCE CO., et al., Defendant-Appellant.
No. 8846.
Court of Appeal of Louisiana, Third Circuit.
May 26, 1982.
*1255 Dubuisson & Dubuisson Edward B. Dubuisson, Opelousas, for defendant-appellant.
Kermit A. Doucet, Lafayette, for plaintiff-appellee.
Sandoz, Sandoz & Schiff Lawrence B. Sandoz, Jr., Opelousas, for defendant-appellee.
Before GUIDRY, STOKER and LABORDE, JJ.
STOKER, Judge.
Plaintiff-appellee, Dorothy Young Bertrand, seeks recovery under a policy of insurance issued by defendant-appellant, Protective Life Insurance Company (Protective Life) to plaintiff's husband, Theogene Peter Bertrand, Jr. (Bertrand). The trial court rendered judgment in favor of plaintiff against Protective Life in the sum of $12,075.00 as well as for penalties of six percent per annum from the date Protective Life received proof of Bertrand's death until the judgment was paid. Protective Life appeals this ruling.

FACTS
On July 10, 1974, Bertrand applied for $12,500.00 of credit life insurance with Protective Life through Lawrence Larcade, Jr. (Larcade) of the St. Landry Homestead Association in connection with a loan from the homestead of $13,000.00. Larcade filled out the application form according to the responses elicited from Bertrand. The policy was issued by Protective Life in the amount of $12,500.00. Bertrand died on June 12, 1975, of cancer. At the time of his death, the benefits due under the policy amounted to $12,075.00. Plaintiff made a claim on Protective Life for this amount, and the insurance company denied the claim on the basis that Bertrand made material misrepresentations on his application for the insurance.

WAS BERTRAND GUILTY OF MATERIAL MISREPRESENTATION?
LSA-R.S. 22:619(B) states:
"B. In any application for life or health and accident insurance made in writing by the insured, all statements therein made by the insured shall, in the absence of fraud, be deemed representations and not warranties. The falsity of any such statement shall not bar the right to recovery under the contract unless such false statement was made with actual intent to deceive or unless it materially affected either the acceptance of the risk or the hazard assumed by the insurer."
*1256 This court in Ryan v. Security Industrial Insurance Company, 386 So.2d 939 (La.App. 3rd Cir. 1980) construed § 619(B) as follows:
"In order for an insurer to avoid liability on the basis of material misrepresentations the insurer must meet a three-tiered burden. It must be shown that the statements were false. Second, the insurer must establish that the representations were made with an actual intent to deceive. Third, the insurance company must establish that these misstatements materially affected the risk assumed by the insurer. Martin v. Security Industrial Insurance Company, 367 So.2d 420 (La. App. 2nd Cir. 1979), writ refused 369 So.2d 1364 (La.1979)."
Questions nine and ten on the application for insurance in the instant case appear as follows:
 "Yes No
"9. X Do you have any physical or
 mental impairment? If YES,
 explain: ___________
"10. X Have you consulted or been
 treated by a physician or other
 practitioner for any illness, or
 been confined in a hospital
 during the last seven years? If
 answer is yes, give particulars
 below."
An "X" appears in the box under the column designated "No" next to both questions. In the space provided under question ten, the notation "Good health" appears.
Protective Life claims that these responses were false representations concerning Bertrand's health. Specifically, Protective Life contends that Bertrand knowingly concealed with the intent to deceive the insurer the fact that he suffered from obesity, diabetes, high blood pressure, and alcoholism and that the misstatement of these facts on the application for insurance materially affected the risk which it assumed. Protective Life also contends that Bertrand intended to deceive the insurer by concealing the fact that he had seen and been treated by doctors and had been hospitalized numerous times in the seven years prior to the date he applied for insurance.
The trial court's reasons for judgment in favor of plaintiff can be summarized in three grounds:
1) Any misrepresentations on the application for insurance are attributable to officials of Protective Life;
2) Bertrand had no intent to deceive Protective Life; and
3) No misstatements on the application for insurance "materially affected the risk assumed by the insurer". We will address the arguments raised by Protective Life against each of these reasons for judgment. Are the misstatements attributable to Protective Life?
Larcade, who handled Bertrand's application for the credit life insurance, and Merrick Cormier, the loan officer who handled Bertrand's loan, were both licensed agents of Protective Life. Both men knew Bertrand before this time through his dealings with the homestead association. The amount of the loan was $13,000.00, yet the credit life insurance only covered $12,500.00 of that loan. Larcade filled out the application form for Bertrand. The trial court found that Larcade filled in the figure of $12,500.00 in the blank on the application labeled "Amount of Loan". The trial court noted that a photocopy of the homestead ledger sheet contained this handwritten note: "Loan was $13,000.00. Took out $12,500.00 because this was non-medical limit at age 49." In other words, $12,500.00 was the maximum amount of insurance which Protective Life would issue to a 49 year old applicant without requiring him to undergo a medical examination. Bertrand was 49 years old at the time he applied for the insurance. Finally, the trial court expressed doubts as to Larcade's testimony that he accurately recorded Bertrand's responses on the application form and found further that the notation "Good health" on the form was Larcade's opinion and was not based on an answer by Bertrand.
Based on these findings, the trial court concluded that the misstatements on the application form were a result of Protective Life's agent having falsely filled out *1257 the application. It is well settled that the acts of an insurance agent in filling out an application form falsely are the acts of his principal, the insurer, and they do not bind the innocent insured nor bar recovery by him or his beneficiaries. See Ryan v. Security Industrial Insurance Company, supra, and the cases cited therein at page 941. The trial court relied on the following quotation from the case of Frugé v. Woodmen of the World Life Insurance Society, 170 So.2d 539 (La.App. 3rd Cir. 1965), as excerpted in Ryan:
"... if the agent by mistake, fraud or negligence inserts erroneous or untrue answers to the questions contained in the application, these representations bind the insurer but are not binding upon the insured."

However, we do not believe that the rationale of the Frugé and Ryan cases and the other cases cited for this proposition is applicable to the present case. In the Frugé case, the insurance agent was informed of the insured's medical condition ("leaking heart") before he filled out the application form for the insured. In Ryan, the insured's medical condition (paralysis) which the insurance company later accused the insured of concealing was readily apparent to the insurance agent who filled out the form. In Morein v. American Physicians Insurance Company, 192 So.2d 887 (La.App. 3rd Cir. 1966), writ refused, 250 La. 268, 195 So.2d 147 (La.1967), the agent knew that the statement he made on the application form that the insured had never had an insurance policy cancelled was false as he was the agent who had issued to the insured an earlier policy which was cancelled. In Cloud v. Security General Life Insurance Company, 352 So.2d 406 (La.App. 3rd Cir. 1977), the false answers to the questions concerning the insured's medical problems and hospitalizations were caused by the agent's failure to inquire as to these questions before answering them for the insured.
In the instant case, we find no evidence that Larcade, the insurance agent who filled out Bertrand's application, was aware of any of Bertrand's medical problems except his apparent obesity. Although Larcade knew Bertrand prior to the taking of his application, he testified that he was unaware of any previous hospitalizations or illnesses of Bertrand and that he never saw Bertrand drunk. Larcade was aware that Bertrand was self-employed in the dirt and heavy construction business, and that he worked long, hard hours. Larcade stated that he read the questions to Bertrand and accurately recorded his responses. There is some disagreement in the testimony as to whether Larcade made the notation, "Good health" on the application in accordance with a response to a question asked of Bertrand or whether Larcade made the notation on his own in consideration of the answers made by Bertrand to the questions concerning his health. There were no other witnesses to the transaction between Larcade and Bertrand.
In light of the foregoing evidence, we cannot say that the misrepresentations on the insurance form are due to the mistake, fraud or negligence of the agent. Bertrand's obesity, which was observable by Larcade, would not generally be considered a physical impairment or illness in the context of questions 9 and 10 on the application form. Larcade's note on the form that Bertrand was in good health was reasonable in light of his responses to the previous questions and the fact that Bertrand was capable of hard work. Furthermore, the fact that the insurance was for the non-medical limit of $12,500.00 instead of the full $13,000.00 amount of the loan does not necessarily indicate fraud on the part of the insurance agent. The limiting of the policy to $12,500.00 to avoid having Bertrand undergo a medical examination could likely have been done for Bertrand's convenience only and without any intent to defraud, conceal or mislead the insurer. In sum, we do not feel that the evidence supports the trial judge's belief that any misrepresentations on the application form are attributable to the agent of the insurer. *1258 Did Bertrand intend to deceive Protective Life?
The trial court found that Bertrand did not intend to deceive the insurer as Bertrand considered himself to be in good health. The record indicates that Bertrand was affected by higher than normal blood sugar and blood pressure levels, was overweight, and had in the past a problem with occasional alcohol abuse. Bertrand had seen physicians within the seven years prior to the time he applied for insurance in 1974 for these and other problems not related to the insurer's failure to pay. These visits averaged two per year from 1969 to 1974. Bertrand had been in a hospital at least twice within the seven year period also, but these stays were apparently made for Bertrand to "dry out" after a bout with alcoholism. Bertrand was taking the drug "antibuse" regularly at the time of the application and had not had a serious drinking problem for the previous three or four years.
The depositions of the doctors who treated Bertrand are somewhat conflicting as to whether Bertrand suffered from diabetes or hypertension. Dr. S. J. Rozas who treated Bertrand for these conditions stated that Bertrand had diabetes but that his blood sugar levels were only slightly above normal for a man of his age and could be treated by diet. Dr. Rozas stated that Bertrand had no indication of hypertension and was in "fair health" as of 1974. Dr. James McCarthy, who was Bertrand's family physician, found Bertrand's blood sugar levels high enough on occasion to be classified as diabetes. Although Dr. McCarthy prescribed a hypoglycemic agent for Bertrand, he stated that "the only definitive treatment of his diabetes was weight reduction". Dr. McCarthy did note a higher than normal blood pressure reading when Bertrand was being treated for an infection, but said that this one reading was not indicative of hypertension.
The testimony of Dr. Emile Ventre, who testified at trial for plaintiff, is helpful in resolving the dilemma of whether or not Bertrand had diabetes or hypertension. Dr. Ventre classified Bertrand's problem as a "diabetes of obesity" rather than a true diabetes mellitus which is caused by the pancreas's inability to produce sufficient insulin and is irreversible. Dr. Ventre speculated that Bertrand's condition was reversible, could be completely controlled, and was probably caused by his consumption of sugar faster than his pancreas could produce insulin to control sugar in the blood. This conclusion is corroborated by Bertrand's habit of consuming many "cokes" during the day. Dr. Ventre said that Bertrand had borderline high blood pressure and hypertension, but that this condition could also be caused by obesity and therefore could be treated by diet.
In short, all of Bertrand's medical problems except for his alcoholism probably related to his obesity, and his alcoholism was under control at the time of the application. The trial court found that Bertrand considered himself to be in good health since he worked full time as a heavy equipment operator. The borderline nature of Bertrand's condition and the fact that it could be treated by diet, as well as Bertrand's work record, gave Bertrand ample reason to believe he had no physical impairment or illness which he needed to report in his insurance application. It also appears that his hospitalizations for alcoholism were voluntary and not confinements as meant in question number ten on the form. Furthermore, it is undenied that Bertrand died of complications from myeloma (bone cancer) and that he was unaware of this condition at the time of the application. Thus, we cannot say that the trial court was clearly wrong in finding that Bertrand had no intent to deceive the insurance company. Arceneaux v. Domingue, 365 So.2d 1330 (La. 1978).
Did the misstatements on the application "materially affect the risk" assumed by Protective Life?
The trial court found that Protective Life would in all likelihood have accepted Bertrand's application for insurance even if it had fully disclosed Bertrand's medical history. In response to the question asked *1259 in interrogatories "... is it the universal practice of yours to deny credit life insurance to an applicant who is taking medication for obesity?", Rufus Rice, Jr., Vice-President of Underwriting for Protective Life, responded:
"No, but an applicant's medical history and treatment must be considered as a whole. Treatment for obesity where there are complicating factors of hypertension and treatment for diabetes mellitus must be considered as a much more serious condition than for obesity alone, and an applicant with all three illnesses would be normally declined."
Mr. Rice gave the same response to questions asking for the company's policy when an applicant is being treated for diabetes mellitus or hypertension. At trial, Mr. Rice stated that Protective Life would accept an applicant of Bertrand's height and weight as stated on his application with no problem.
It is undenied that the cause of Bertrand's death (cancer) was unrelated to his obesity, his blood sugar or blood pressure, or his alcoholism. It appears from the record that Bertrand's elevated blood pressure and sugar levels were due to his obesity and that his obesity was evident to the agent taking his application and from the answers on the application itself. Since the existence of no one of these conditions alone would have been sufficient reason to deny Bertrand's application, Protective Life was apparently unaware that all of these problems were attributable to Bertrand's obesity. Also, Bertrand's alcoholism was apparently under control. Therefore, we cannot say that the trial court was clearly wrong in concluding that had Protective Life been fully apprised of these facts it would have nevertheless still issued the policy.

PENALTIES
The trial court assessed penalties against Protective Life in the amount of six percent per annum from the date the insurer received Bertrand's death certificate until the policy limits are paid. The court's authority ruling is found in LSA-R.S. 22:656 which states:
"All death claims arising under policies of insurance issued or delivered within this state shall be settled by the insurer within sixty days from the date of receipt of due proof of death and should the insurer fail to do so without just cause, then the amount due shall bear interest at the rate of six per cent per annum from date of receipt of due proof of death by the insurer until paid."[1]
Protective Life claims that its investigation of plaintiff's claim under Bertrand's policy revealed enough evidence to sustain a defense of just cause for its failure to pay the claim within 60 days. We agree. Although we have found upon close examination that the alleged misrepresentations on the application for insurance were made unintentionally and did not materially affect the risk undertaken by the insurer, Protective Life was justified in believing it had found such reasons to refuse the claim after its investigation. The investigation uncovered substantial evidence that Bertrand may have had diabetes, hypertension, and a problem with alcohol which he failed to reveal in his application. As we have noted, these problems were not serious, but the medical evidence to that effect was confusing. Furthermore, Protective Life uncovered evidence of Bertrand's hospitalizations but was unable to clearly determine the reasons for these stays. We have concluded that these were voluntary treatments to "dry out", that is, to combat alcoholism. These hospitalizations did not materially affect the risk assumed by the insurer because Bertrand's alcoholism was under control at the time the policy was issued, but Protective Life could not have determined this easily as the hospital records apparently do not reflect the reasons for Bertrand's stays.
*1260 An insurer's refusal to pay can be found to be not "without just cause" even though its defense is not subsequently upheld in court. Ducote v. Life Insurance Company of Louisiana, 245 So.2d 531 (La.App. 3rd Cir. 1971); and Hendricks v. Connecticut General Life Insurance Company, 244 So.2d 249 (La.App. 3rd Cir. 1971). Protective Life had just cause to believe that Bertrand intended to omit from his application information which may have caused the application to be rejected. Furthermore, the fact that the application did not disclose this information cannot be attributed to Protective Life's agent. Therefore, we will amend the trial court's ruling to deny the assessment of penalties against Protective Life.
For the foregoing reasons, we affirm the trial court's judgment in favor of plaintiff except to amend the judgment to exclude the assessment of penalties of six percent per annum against defendant. The costs of this appeal shall be apportioned equally between appellant and appellee.
AMENDED AND AFFIRMED AS AMENDED.
NOTES
[1] LSA-R.S. 22:656 was amended by Acts 1980, No. 477, § 1 to increase the penalties to eight percent per annum.