426 So.2d 665 (1982)
Mamie J. McCLELLAND
v.
SECURITY INDUSTRIAL INSURANCE COMPANY.
No. 82 CA 0237.
Court of Appeal of Louisiana, First Circuit.
December 21, 1982.
Rehearing Denied February 17, 1983.
Writ Denied March 25, 1983.
*667 John W. Anthony, Bogalusa, for plaintiff.
Victor L. Marcello, Donaldsonville, for appellant.
Before COVINGTON, LEAR and LANIER, JJ.
LANIER, Judge.
This is a suit in contract by the beneficiary of a policy of life insurance to collect the $1,250.00 face value of the policy and for statutory penalties. The insurer defended this action alleging that a false statement was made in the insured's application for coverage, that the insured was not in sound health when the policy was issued, and that the beneficiary was estopped from pursuing her claim under the doctrine of accord and satisfaction. The trial judge rendered judgment in favor of the beneficiary for the face value of the policy, but denied her claim for statutory penalties. The insurer took this suspensive appeal. The beneficiary answered the appeal alleging that the trial court committed error by not awarding statutory penalties and sought damages for a frivolous appeal.

I. FACTS
Pursuant to an application for insurance dated January 11, 1978, the Security Industrial Insurance Company (Security) issued a policy of insurance to Gaerdet Brooks[1] on January 15, 1978, with a death benefit of $1,250.00. Mamie J. McClelland was designated as the beneficiary of this policy. On October 25, 1978, Brooks died of a mediastinal shift, ruptured lung cyst, and bronchial asthma. On November 8, 1978, McClelland filed a claim with Security for the proceeds of the policy. Security determined that it would not pay the policy benefits and issued a check to McClelland dated February 20, 1979, in the sum of $62.00 representing a return of the ten monthly premiums of $6.20 that she had paid on behalf of Brooks. The following language appeared on the reverse side of this check:
"The endorsement of this check by the payee is in full and final settlement of all claims represented by Policy Number 2166756"
Immediately under this statement was a signature block designated "Payee". McClelland endorsed the check on the line designated "Payee" and cashed it. This suit followed.

II. GOOD HEALTH CLAUSE
Security resists liability in this case on the basis of the "good health" clause found in the policy. The policy specifically provides as follows:
"No obligation is assumed by the Company until the first premium has been paid in full and this Policy delivered and accepted by the Insured (or his/her guardian) and while the policyholder is alive and in good health."
Louisiana courts have recognized that good health clauses in life insurance policies are not contrary to public policy and are enforceable. Such provisions clearly evidence an intention of the insurer to make the insured's sound health a condition precedent to the viability of the contract. The burden is on the insurer to prove by clear and convincing evidence that the insured was not in good health on the effective date of the policy, which in this case is January 15, 1978. Ryan v. Security Industrial Insurance Company, 386 So.2d 939 (La.App. 3rd Cir.1980); Martin v. Security Industrial Insurance Co., 367 So.2d 420 (La.App. 2nd Cir.1979), writ denied 369 So.2d 1364 (La. 1979).
To show Brooks' medical condition at the time the policy was issued, Security introduced into evidence his medical records from the Washington-St. Tammany Charity Hospital. These records show that Brooks was a known asthmatic since 1963, and was admitted to the hospital on many occasions for this condition. He was admitted to the hospital on October 12, 1977, for diagnostic *668 studies and was discharged on October 14, 1977. His condition was diagnosed as bullous emphysema with mild pulmonary fibrosis and status asthmaticus. He returned to the hospital on November 9, 1977, December 14, 1977, and January 4, 1978, for prescription refills and followup examinations. On May 11, 1978, he was readmitted to the hospital and was subsequently discharged on May 20, 1978. During this period, he was treated for upper respiratory tract infection and chronic obstructive pulmonary disease. However, the insured's application for insurance shows that on January 11, 1978, he was employed as a truck driver for the Angie Lumber Company. There is no expert medical evidence in the record to explain the precise nature of the insured's medical condition at the time that the policy was issued. There is no expert medical testimony in the record as to whether or not his medical condition could be classified as good, fair, or bad health. See, for example, Audubon Life Insurance Co. v. Lauzervich, 242 So.2d 589 (La.App. 1st Cir.1970). Since Security's records indicate that the insured was employed immediately prior to the effective date of the policy, and because there is no medical evidence of record to classify or explain the medical condition of the insured on the effective date of the policy, the trial judge was not clearly wrong in determining that Security had failed to prove that the insured was not in good health by clear and convincing evidence. Arceneaux v. Domingue, 365 So.2d 1330 (La.1978).

III. FALSE STATEMENTS AFFECTING COVERAGE
Question 6A in Security's application for insurance provides as follows:
"6.A. Is proposed insured now in good health without any impairment? Yes [] No []"
The answer "Yes" is checked off.
Question number 10 provides as follows:
"10. When last sick or consulted a doctor: month, year, illness, disease, injury, etc."
The word "none" is written in reply to this question.
Question number 11 provides as follows:
"11. Has proposed Insured ever had tuberculosis, asthma, any disease of lungs, apoplexy, paralysis, heart disease, high blood pressure, mental or nervous disorder, epilepsy, convulsions, syphilis, rheumatism, arthritis, rupture, disease of circulatory system, stomach, intestines, liver, gall bladder, prostate, or thyroid gland, sugar, albumin or blood in urine, diabetes, cancer, tumor, ulcer, impaired sight or hearing, any imputation, deformity, operation? Yes No"
The answer "No" is circled on the original application. Security claims that the answers to these questions are false because Brooks was suffering from emphysema and bronchial asthma at the time that the application was submitted.
A false statement made by a prospective insured in an application for life or health and accident insurance will bar recovery if it is made with the intent to deceive or it materially affects the risk. La.R.S. 22:619(B); Coleman v. Occidental Life Insurance Company of North Carolina, 418 So.2d 645 (La.1982); Topps v. Universal Life Insurance Company, 396 So.2d 394 (La. App. 1st Cir.1981). The burden is on the insurer to prove this defense. Cousin v. Page, 372 So.2d 1231 (La.1979). Strict proof of fraud is not required, and the intent to deceive is to be determined from the attending circumstances indicating knowledge of the falsity and recognition of the materiality of the false statement, or from circumstances which create a reasonable assumption that the materiality of the misrepresentation was recognized. Thompson v. Business Insurance Life of America, 413 So.2d 331 (La.App. 3rd Cir.1982).
Mamie McClelland testified that on January 11, 1978, Ernestine Henry, an agent for Security, came to her home to discuss purchasing several insurance policies. McClelland was primarily interested in securing policies for herself, her daughter, and her mother, but also determined to get one for *669 Brooks with whom she had been living for the last six years. Henry only asked Brooks for his age, date of birth, and address. Henry did not ask any questions concerning Brooks' health. Henry filled out the application and Brooks signed it. McClelland knew that Brooks was sick, but did not know then that he had emphysema. The only three persons on the premises at the time were Brooks, McClelland and Henry. McClelland's daughter was at school and her mother was in Mississippi. Brooks left the premises after the insurance business was completed.
Ernestine Henry testified that on January 11, 1978, she was an agent for Security and went to visit Mamie McClelland on insurance business. Present in the home at that time were McClelland, Brooks and McClelland's mother and daughter. Shortly after Henry arrived on the premises, Brooks left before she had an opportunity to speak with him. After some discussion, McClelland bought policies on herself, her mother and her daughter. Then McClelland determined to get a policy on Brooks. Henry admitted that the handwriting on the Brooks' application is hers, except for Brooks' signature. Brooks did not sign the application because he was not present, but Henry did not remember who signed for him. Henry asked question number 6A to McClelland and McClelland's response to the question was "fair". Henry construed "fair" to mean that Brooks had nothing wrong and checked the square for "Yes". Henry did not ask any further questions concerning Brooks' health and McClelland did not furnish any additional information. Apparently, Henry supplied the answers to questions 10 and 11 on her own.
Faced with this conflicting testimony, the trial judge accepted the facts as related by Ernestine Henry with the following observations in his excellent reasons for judgment:
"... At the time this policy was applied for, plaintiff knew that the proposed insured was sick although she did not know that he had emphysema. She thought that he had asthma when the policy was applied for but did not reveal this to defendant's agent. Mrs. Henry did not ask plaintiff to elaborate on the reason why plaintiff classified the insured's health as `fair'. Mrs. Henry should have delved further into the question of insured's health as to why he was not in good health. This Court has no indication whatsoever that plaintiff would not have answered such questions concerning the state of the insured's health truthfully. This Court finds that the record does not establish that plaintiff intended to deceive this insurance agent in applying for this insurance...."
This factual finding by the trial judge is not clearly wrong. Arceneaux v. Domingue, supra.
According to the testimony of Henry (which was accepted by the trial judge), it was she, and not the insured or beneficiary, who put the inaccurate statements in the application. Security is bound by these actions of its agent. Bertrand v. Protective Life Insurance Co., 419 So.2d 1254 (La.App. 3rd Cir.1982). The actions of the agent do not bind the insured or his beneficiary. Further, the evidence does not show that McClelland's categorization of Brooks' health as "fair" is false. The application for insurance (Security's record) shows that Brooks was employed as a truck driver for a lumber company and thus was not disabled from working. There is no expert medical evidence of record to show whether or not Brooks' medical condition at that time could be classified as "fair".

IV. ACCORD AND SATISFACTION
Security contends that Mamie McClelland is estopped from pursuing this claim under the doctrine of accord and satisfaction because she endorsed and cashed the $62.00 check bearing the statement that it was in full and final settlement of all claims under the Security policy.
The doctrine of accord and satisfaction is a jurisprudentially created method by which an obligation can be extinguished. Necessary for the application of *670 this doctrine are a disputed claim, a tender of payment for less than the amount of the claim by the debtor, and an acceptance of the tender by the creditor. Essential to a valid accord and satisfaction is that the creditor understands that the payment is tendered in full settlement of the dispute. Adams v. Sconza, 380 So.2d 679 (La.App. 4th Cir.1980); Louisiana National Bank of Baton Rouge v. Heindel, 365 So.2d 37 (La. App. 4th Cir.1978); Eppling v. Jon-T Chemicals, Inc., 363 So.2d 1263 (La.App. 4th Cir. 1978); Terra Trucks, Inc. v. Weber, 346 So.2d 275 (La.App. 4th Cir.1977); Charles X. Miller, Inc. v. Oak Builders, Inc., 306 So.2d 449 (La.App. 4th Cir.1975); Antoine v. Elder Realty Company, 255 So.2d 625 (La.App. 3rd Cir.1971); Linda Mercantile Corporation v. Bowers, 230 So.2d 302 (La. App. 1st Cir.1969), writ refused 255 La. 810, 233 So.2d 250 (1970).[2]
The learned trial judge analyzed the evidence on this issue in his reasons for judgment as follows:
"... After observing plaintiff and listening to her testimony, this Court concludes that plaintiff was not an educated individual and was not versed in the field of insurance. Plaintiff testified that she saw defendant's agent, Mrs. Henry, the day after the insured's death when Mrs. Henry told plaintiff to get a death certificate and the insurance would be paid. Pursuant to this communication, plaintiff took the insurance policy and a death certificate to Mrs. Henry's office about two weeks after the insured's death. Plaintiff left the policy and death certificate at Mrs. Henry's office. Mrs. Henry was not in her office at the time. Plaintiff further testified that she later saw Mrs. Henry when she brought plaintiff a check at a drive-in eatery where plaintiff worked as a cook. Plaintiff testified that Mrs. Henry told her then that a check for $62 was being given her representing a refund of premium since deceased had not been insured long enough to be under the policy. In spite of this communication to plaintiff, she testified that she did not understand that defendant would not pay the policy. She did not understand that this check was to represent full settlement of her claim. Plaintiff stated that Mrs. Henry did not tell her that the check was for full settlement and did not read the check to her. When plaintiff signed the check she did not read the printed information above her signature, which was the release language.
"Mrs. Henry testified that she saw plaintiff only for about five minutes at this drive-in where she presented plaintiff with the check. Mrs. Henry further testified that at the drive-in she told plaintiff that she had a check for her since the company would not pay the policy because of health problems.
"This Court is impressed with the fact that plaintiff did not realize that this premium refund check was being tendered to her in full settlement of her claim. Defendant's agent had already told plaintiff that the policy would be paid upon presentation of a death certificate. Without any further communication with plaintiff, Mrs. Henry shows up at plaintiff's place of employment with a $62 check which was handed plaintiff with the statement that the check represented a refund of premium since the deceased had not been insured long enough to be under the policy.
"This Court finds that plaintiff did not understand defendant's agent's brief communication in receiving this check in light of her having been told by defendant's agent that the policy would be paid upon presentation of a death certificate. In addition, plaintiff did not read the release language on the back of the check when she executed it. In light of these *671 facts, this Court finds that plaintiff did not understand that this $62 was being tendered in full settlement. There was no informed consent in plaintiff's acceptance of this $62 check. Charles X. Miller, Inc. v. Oak Builders, Inc., supra. The defendant has not proven the defense of accord and satisfaction...."
These findings by the trial judge are not clearly wrong. Arceneaux v. Domingue, supra.
Counsel for the appellant asserted in oral argument before this court that one who signs a written instrument (like McClelland herein) is presumed to know its contents and cannot avoid its obligations by contending that he did not read it, or that it was not explained, or that he did not understand it, citing Ideal Loan of New Orleans, Inc. v. Johnson, 218 So.2d 634 (La.App. 4th Cir. 1969).[3]
The doctrine of accord and satisfaction is a common law concept judicially incorporated in Louisiana jurisprudence and is grounded on basic contractual principles. Berger v. Quintero, 170 La. 37, 127 So. 356 (1930); Charles X. Miller, Inc. v. Oak Builders, Inc., supra.[4] It is hornbook contract law that the courts are bound to give legal effect to all written contracts according to the true intent of the parties and this intent is to be determined by the words of the contract when these are clear, explicit and lead to no absurd consequences. La.C.C. art. 1945; Campesi v. Margaret Plantation, 417 So.2d 1265 (La.App. 1st Cir.1982), writ denied 422 So.2d 163 (La.1982). The meaning and intent of the parties to the written contract in such cases must be sought within the four corners of the instrument and cannot be explained or contradicted by parol evidence. La.C.C. art. 2276; Tauzin v. Claitor, 417 So.2d 1304 (La.App. 1st Cir. 1982). In such cases, the presumption asserted by the appellant comes into play and is conclusive. Eppling v. Jon-T Chemicals, Inc., supra. However, when the terms of a written contract are susceptible to more than one interpretation, or there is uncertainty or ambiguity as to its provisions, or the intent of the parties cannot be ascertained from the language employed, parol evidence is admissible to clarify the ambiguity and to show the intention of the parties. Dixie Campers, Inc. v. Vesely Company, 398 So.2d 1087 (La.1981).
The restrictive endorsement in the instant case is clear and explicit in providing that it "is in full and final settlement of all claims represented by" the policy. However, parol evidence concerning the intention and understanding of the parties was admitted into evidence without objection. The failure to object to this evidence in the trial court constitutes a waiver of the right to assert the presumption and a waiver of the right to complain about the trial judge's consideration of the evidence. Temple v. Liberty Mutual Ins. Co., 330 So.2d 891 (La. 1976); Belaire v. Vanderbrook, 405 So.2d 1143 (La.App. 1st Cir.1981), writs denied 407 So.2d 749 (La.1981) and 409 So.2d 659 (La.1982).

V. STATUTORY PENALTIES
McClelland contends that the trial judge committed error by failing to award statutory penalties pursuant to La.R.S. 22:656. That statute provides that if the insurer fails to pay a death claim under a life insurance policy within sixty days after the date of receipt of the proof of death, that the amount due under the policy shall bear interest at the rate of 6% per annum from date of receipt of the proof of death *672 until paid.[5] The trial judge ruled that the insurer had reasonable grounds to believe that it had a valid defense to payment of the beneficiary's claim. After carefully reviewing the facts and the law in this case, we are satisfied that this ruling of the trial judge is correct.

VI. FRIVOLOUS APPEAL
McClelland contends that she is entitled to an award of damages for frivolous appeal pursuant to La.C.C.P. art. 2164. This statute is penal in nature and must be strictly construed. Jackson v. East Baton Rouge School Board, 348 So.2d 739 (La.App. 1st Cir.1977). Damages for frivolous appeal will not be granted unless they are clearly due. Maxwell v. State, Department of Transportation and Development, 391 So.2d 1230 (La.App. 1st Cir.1980), writ denied 394 So.2d 281 (La.1980); Jenkins v. Dicon, Inc., 387 So.2d 649 (La.App. 1st Cir.1980). A review of the record shows that there were serious factual disputes between the parties. There is no evidence of record to show that this appeal was taken solely for delay or that there was no serious belief as to the merits of the appeal. We believe that this appeal was reasonably taken as a genuine effort to win a reversal, and accordingly, damages for frivolous appeal are not due.

VII. CONCLUSION
For the foregoing reasons, the judgment of the trial court is correct and is affirmed. Security is to pay all costs of this appeal.
AFFIRMED.
NOTES
[1] The insured's first name is alternately spelled "Gaurdet" and "Gaundet" in the death certificate. The insured's first name is spelled "Gaudet" in the records of the Washington-St. Tammany Charity Hospital.
[2] By requiring a meeting of the minds between the parties as to exactly what they intend and requiring that the creditor understands that the payment is tendered in full settlement, the doctrine of accord and satisfaction is identical to its more formal cousin, the doctrine of compromise. La.C.C. arts. 3071, 3073 and 3079; Mooneyhan v. State Farm Mutual Automobile Insurance Company, 290 So.2d 405 (La.App. 2nd Cir.1974); Lowery v. Anderson, 265 So.2d 644 (La.App. 2nd Cir.1972); Harris v. Stockman, 197 So.2d 365 (La.App. 2nd Cir.1967).
[3] See also Lama v. Manale, 218 La. 511, 50 So.2d 15 (1950); Jackson v. Continental Casualty Company, 402 So.2d 175 (La.App. 1st Cir. 1981), reversed on other grounds 412 So.2d 1364 (La.1982); Mitchell v. Bertolla, 397 So.2d 56 (La.App. 2nd Cir.1981), writ denied 400 So.2d 669 (La.1981); Lazybug Shops, Inc. v. American District Telegraph, 374 So.2d 183 (La.App. 4th Cir.1979), writ denied 376 So.2d 1271 (La.1979); Leny v. Friedman, 372 So.2d 721 (La.App. 4th Cir.1979), writ denied 375 So.2d 943 (La.1979); South Central Bell Telephone Company v. McKay, 285 So.2d 563 (La. App. 1st Cir.1973).
[4] The apparent reason for the use of this doctrine is to avoid the more formal requirements of the doctrine of compromise, La.C.C. arts. 3071 et seq., when extinguishing obligations.
[5] La.R.S. 22:656 was amended by Act 477 of 1980 to provide 8% penalty interest. This claim accrued prior to the effective date of that Act.