GAUDIN, Judge.
Riverside Life Insurance Company appeals from a judgment of the 24th Judicial District Court in favor of Mrs. Barbara A. Chifici. Riverside refused to pay to Mrs. Chifici the proceeds of her husband’s life insurance policy because he allegedly had intentionally misrepresented his medical condition on the application form. We affirm.
We also affirm that portion of the judgment which denied statutory penalties and attorney fees. Mrs. Chifici had answered Riverside’s appeal, seeking an additional $32,000.00.
Mr. Chifici died at age 43 on September 3, 1985. Riverside contends that Mr. Chifi-ci, when he applied for the $400,000.00 policy, purposely concealed the fact that he had a diabetic, blood sugar condition. Had it known of this, Riverside argues, the policy would not have been issued. Mr. Chifici had a death-causing cancer on or near his spine.
Mr. Chifici was 41 years of age when he applied for the policy at the request of the First National Bank of St. Bernard Parish to secure repayment of a loan made to him.
On appeal, Riverside assigns five district court errors, mostly related to Mr. Chifici’s supposed deceit. The insurance company contends the trial judge erred (1) in determining that there was no misrepresentation *812 on the application, (2) in finding that there was no misrepresentation with the actual intent to deceive, (3) in deciding that any misrepresentation did not materially affect either the acceptance by Riverside of the risk or the hazard assumed by the insurer, (4) in clearly abusing his discretion and (5) in granting Mrs. Chifici’s motion for a directed verdict following presentation of Riverside’s case.
Mrs. Chifici points out initially that Mr. Chifici died of cancer, which was neither caused by nor related to diabetes. She cites Bertrand v. Protective Life Ins. Co., 419 So.2d 1254 (La.App. 3rd Cir.1982), a case not entirely in focus with the instant facts but one in which the courts ordered proceeds of a life insurance policy payable to the beneficiary when the cause of death (cancer) was not connected to misstatements on the application form. The misrepresentations were with regard to obesity, blood sugar, blood pressure and alcoholism.
While there is some merit in this contention, we do not have to consider it. The trial judge’s finding that Mr. Chifici did not intentionally misrepresent his medical condition is supported by the evidence and is not manifestly wrong. The holdings of Bertrand are therefore of no moment.
The application form was completed on December 6, 1983 by Dr. Arnold Alper, a specialist in internal medicine, who asked Mr. Chifici a series of questions and then recorded Mr. Chifici’s answers. Several of the questions dealt with sugar, blood or pus in the urine and with diabetes. The “No” boxes were checked off by Dr. Alper, indicating negative responses by Mr. Chifi-ci to these questions.
Dr. Alper performed a physical examination for Riverside after completing the questionnaire (“D-3” in evidence). The urinalysis done that day showed no abnormalities and no evidence of diabetes or a blood sugar disorder. Dr. Alper had done other examinations on Mr. Chifici in past years (in 1978 and 1982), and there had never been any indication of diabetes or a blood sugar problem.
Other physicians who testified were Drs. Sanford Pailet [1], Edward Gaber and Joseph Perret. Dr. Pailet, an ophthalmologist, saw Mr. Chifici on January 22, 1979 because of headaches possibly related to Mr. Chifici’s eyesight. One of Dr. Pailet’s records contains a reference to diabetes but the doctor said: “It may have been a referral to the family history.”
Dr. Pailet said that one of his associates (Dr. Sibley) examined Mr. Chifici and "... found nothing wrong other than a refractive error.”
On November 30, 1984, Mr. Chifici returned to Dr. Pailet because of decreased close vision. Although Mr. Chifici was then taking diabanese, an anti-diabetes drug, and thyroid pills, Dr. Pailet stated that there was no evidence of diabetes in Mr. Chifici’s eyes.
Dr. Pailet testified that diabetes, being the third leading cause of blindness in the United States, is very common among patients seeking his help; however, Mr. Chifi-ci had no evidence of a diabetic stigma.
Dr. Gaber, who specializes in internal medicine, first saw Mr. Chifici on October 21, 1982. At that time, Dr. Gaber performed tests and advised Mr Chifici that he (the doctor) wasn’t sure if Mr. Chifici had diabetes or impaired glucose tolerance. Dr. Gaber treated Mr. Chifici for a fungus condition in November, 1982.
On May 23, 1983, Dr. Gaber again saw Mr. Chifici, who had been in the East Jefferson Hospital emergency room two days earlier with a middle ear infection. Although Mr. Chifici’s blood sugar was high, Dr. Gaber said, he (Dr. Gaber) felt that Mr. Chifici had impaired glucose tolerance, not diabetes.
Another blood test was done on October 11,1983. Dr. Gaber’s records indicate that his secretary called and told Mr. Chifici “... that his blood sugar was much too high.” Dr. Gaber testified:
“I felt at least to myself ... he definitely had diabetes. Now, whether he under *813 stood he was quote diabetic, I don’t have any indication of that.”
Dr. Gaber said that he told Mr Chifici that his blood sugar was high ...” and that diabanese was prescribed. Dr. Gaber said, however, that his records do not reflect any time when Mr. Chifici was specifically told he was diabetic until November of 1985.
Dr. Gaber also said that his records and notes show that Mr. Chifici used the word “diabetes” only once, at the time of the first visit on October 21, 1982 when, according to the doctor’s notes, Mr. Chifici “... came in questioning whether he had mild diabetes.”
In Dr. Gaber’s records is an entry dated September 21, 1984 listing various complaints by Mr. Chifici and observations by the physician. On the list are obesity, impaired glucose tolerance, high triglycerides and cancer of the tongue. Dr. Gaber testified that he “... was trying to summarize ...” Mr. Chifici’s problems. Diabetes is conspicuously missing from the list.
Dr. Perret testified that he reviewed Mr. Chifici’s application and approved it because of Mr. Chifici’s misrepresentations.
This state’s jurisprudence has consistently held that an insurance company, refusing to pay the beneficiary of a life policy, must prove that a misrepresentation was in fact made with the actual intent to deceive and that the misrepresentation materially affected the acceptance or the hazard assumed. See Coleman v. Occidental Life Ins. Co. of North Carolina, 418 So.2d 645 (La.1982). Misrepresentation can be shown from circumstances indicating the insured’s knowledge of the falsity of representations made and his recognition of the materiality of the misrepresentations. See Cousin v. Page, 372 So.2d 1231 (La.1979).
While there are some suggestions in the record that Mr. Chifici was not altogether straightforward in his responses to Dr. Al-per’s inquiries, the record nonetheless is supportive of the trial judge. Not a single Riverside witness, medical or otherwise, could say with certainty that Mr. Chifici was advised that he had diabetes before December 6,1983, the day he saw and was examined by Dr. Alper.
A finding by the trial judge that Mr. Chifici knew for sure that he had diabetes when he applied for the policy and that he intentionally misrepresented this fact would necessarily be considerably based on speculation.
In assigned “Reasons for Judgment,” the trial judge said:
“A Court normally relies on the credibility of witnesses, including the plaintiff and defendant in deciding a case. When there is no witness sitting live to rely on, we must rely on documents and reports to establish credibility. Normally, the more removed from an interest or bias, the more objective or reliable such evidence is.
“In this case we have a report prepared by Equifax, an agency for the insurance company, stating that Mr. Chifici is of the highest moral character. This report does not describe the type of person who would lie on his insurance application. The Court does not think that Mr. Chifici intentionally misrepresented the state of his health on his application for life insurance with Riverside Life Insurance Company. It wasn’t even Mr. Chifici’s idea to obtain additional life insurance. He did so because his bank requested that he obtain an additional policy as security for a loan.”
There is no testimony in the record indicating that the success of Mr. Chifici’s loan application depended on his being able to obtain life insurance coverage.
In Riverside’s fifth assignment of error, the insurance company finds procedural fault with the granting of the directed verdict in Mrs. Chifici’s favor. At the hearing, Riverside and Mrs. Chifici (and also the intervenor, Commercial Bank and Trust Company) put in the record all of the documentary evidence' they had and they summoned all witnesses they wished to call. When Riverside concluded the presentation of its defense, Mrs. Chifici moved for a directed verdict. At that time, all of the evidence had been submitted and all witnesses had testified; Riverside does not *814 contend that it was denied the opportunity to produce other documents or call additional witnesses. If the trial judge erred in granting the motion instead of taking the case under advisement and then rendering a regular judgment, it makes no difference as far as the final result is concerned. Mrs. Chifici, as the named beneficiary, is entitled to recovery on appeal. The entire record is before us and we find that the trial judge’s factual findings are not clearly wrong. As stated in Jackson v. Hurst, 480 So.2d 487 (La.App. 5th Cir.1985), reasonable evaluations of credibility and inferences of fact where there is a conflict should not be disturbed on appeal even though the appellate court may feel that its evaluations and inferences are just as, or more, reasonable.
Mrs. Chifici’s claim for statutory penalties and attorney fees was properly denied, as was appellee’s request for damages because of Riverside’s frivolous appeal. Louisiana jurisprudence favors appellate review.
The trial judge determined that Dr. Ga-ber’s impressions gave rise to an inquiry and then allowed the insurance company to deny payment without being statutorily[2] arbitrary and capricious. We cannot say this was error. Dr. Gaber said that while there was a 95 per cent chance that he had informed Mr. Chifici of his diabetes, he (Dr. Gaber) couldn't be positive of this. This uncertainty, along with other testimony and evidence, resulted in the judgment favorable to Mrs. Chifici.
We affirm the judgments of March 31, 1988 and May 25, 1988, the May decree being an amended judgment recognizing the rights of the intervenor as per stipulation of counsel. Riverside is to pay costs of this appeal.
AFFIRMED

. Testified by deposition.

. See LSA-R.S. 22:619(B), as amended.